LOUIS VANDOLF, Plaintiff, *v.* DANI EL OTIS, Defendant.

*Appeal from Marion.—Chancery Injunction.*

A settler, with an Indian woman for a wife, is a "married" man, within the meaning of the 4th section of the donation act.

IN the District Court of Marion County, at the November term, an injunction in this cause, previously granted by the chief-justice, on a hearing at chambers, was rendered perpetual, enjoining the defendant from further use and occupation of the plaintiff's land claim. Defendant appealed from the decision of the District Court, and, upon hearing in the Supreme Court, the decree in the court below was affirmed.

*J. K. Kelly* for plaintiff.

*J. G. Wilson,* for defendant.

WILLIAMS, C. J. The difficulty in this case consists in determining whether a settler, in all other respects qualified, can hold 640 acres of land under the donation act, when the wife of such settler is a woman of the Indian race. Defendant admits that he has attempted to take and use the south half of plaintiff's claim; but says the said south half has been set apart by the surveyor-general to the Indian wife of plaintiff; therefore, he has a right to take and treat the land so set apart as vacant land.

Plaintiff claims under section four of said act, which provides that "there shall be and hereby is granted to every white settler or occupant of the public lands," &c., but it is said that "plaintiff's wife is not white," therefore she cannot take and hold under said section.

Admitting the premises to be correct, the conclusion does not follow, unless the wife is to be regarded as a "settler"

Vandolf *v.* Otis.

within the meaning of the donation act. Beyond all question, if the wife must be qualified as a "settler" in one respect, she must be so qualified in all respects ; so that she must not only be of the required color, but of the required age and capacity, or she is entitled to nothing under said act. If the wife of a competent settler has no rights under the donation act, because she is not "white," then it is perfectly certain that the wife of such a settler has no rights under said act, unless she is over the age of eighteen years, for the law, in one breath, prescribes both age and color. Such a conclusion would not only contravene the obvious meaning and uniform construction of said act, but would destroy the hitherto unquestioned right to a large amount of property in Oregon. Furthermore, if the wife only takes as a "settler," she must be a "citizen of the United States ;" or, in the language of the act, must have "made a declaration according to law of his intention to become such." Independent of any inference to be drawn from this language, it can hardly be supposed that Congress intended to drive the wife of an American citizen, if of foreign birth, to the extraordinary and unusual process, for females, of naturalization by the courts, before she could participate with her husband in the benefits of the said act.

Section five of said act provides, that to "all white male citizens" emigrating, &c., shall be granted, &c..; "if married, 320 acres, one-half to the husband, and the other half to the wife, in her own right." This section differs in phraseology somewhat from section four, but the manifest object of that difference is to give persons, emigrating to Oregon after 1850, one-half as much as section four gives to emigrants before that time. So far as the provisions for the wife are concerned, the language of both sections is substantially the same. Now it is demonstrably certain that the wife, under section five, does not take on account of her color, age, or conduct as a settler, but by virtue of her matrimonial relations to a legal settler. If this be not so, then the wife, to hold under said section, must be a "white male citizen," which is impossible. Congress surely did not intend to make it more

difficult for females, coming to Oregon prior to 1850, to hold land, than for those who came after that period. Section four grants to every " white settler, or occupant," &c.; section five to all " white male citizens." Whatever difference as to females may be found in these sections, certain it is, that section five is more exclusive in its language than section four.

Section six provides, that at certain times " each of said settlers shall notify the surveyor-general of the precise tract, or tracts, claimed by them respectively." " Said settlers," referred to here, are the settlers mentioned in sections four and five. Now, if the wife is one of " said settlers," she must notify the surveyor-general of the precise tract which she claims, and this she cannot do, for she is not allowed to claim any precise tract till it is designated for her by the surveyor-general. If, then, she is not bound to notify under section six, she is not a " settler" under sections four and five. Provision is made in section eight for the widow, where one is left by the decease of " any settler," but there is no implication that " any settler" may die and leave a widower. Taking all parts of the law together, it is evident that the qualifications of a husband, as a " settler" *per se*, qualify the wife, so that each gets an equal share of the donation. Whenever a claimant is otherwise competent, he is entitled to 640 acres, under section four, " if a married man," and no other exposition of his family affairs is necessary to establish his right. More than this, the surveyor-general has no authority, by law, to inquire into, or receive evidence as to the age or complextion of a claimant's wife ; such claimant is not bound to prove more, or permitted to prove less, than the said act requires, to perfect his title to a land claim.

Now, is not a man, legally married to an Indian woman, as much a " married man," to all intents and purposes, as though his wife were the "fairest of the fair ?" Is not an Indian woman, married to a white male citizen of the United States, " a wife in every sense of the law ?" If two women are married in the same way to the same sort of men, can it

be said that one is a "wife" because she is white, and that the other is not a "wife" because she is copper-colored? Are the children of a white man and an Indian woman, legally married, bastards, because their mother is not white? The conclusion is irresistible that an Indian woman, married to a "settler," is a "wife," within the meaning of the donation act, and, therefore, on account of her wifeship, entitled to one-half of her husband's claim. But it is said that an Indian woman is an alien, and, therefore, has no inheritable blood, and cannot be endowed of her husband's estate. Admitting this to be true, it is wholly immaterial, and avails nothing in this case. The question here is, not what would be the rights of an Indian wife in the estate of a deceased husband, at common law, but what are her rights under the donation act, as the wife of a living legal settler. Congress could give land to an Indian wife as well as to any other person, and the simple question is, whether Congress has done so or not. If Congress has done so, which is evident, then the matter of blood is as unimportant as that of color. But this absurd doctrine that one has inheritable blood, and another has not, is exploded here, for by our law aliens can purchase, inherit, hold and convey property, as if they were native-born citizens. It is said that the policy of the government has been to keep the whites and Indians apart, and, therefore, it is not to be supposed that Congress would, by law, sanction marriages between them.

Whatever policy upon this subject government may have pursued elsewhere, its course here has been different, for white persons were invited to settle in this country before any steps were taken by government to remove the Indians, or extinguish their right to the soil. When the donation act was passed, Congress must have known that many of the early settlers of Oregon had married Indian women; and if it was not intended to place men so married upon the same footing with other married men, why did not Congress say so, instead of using language, by the terms of which they were clearly embraced? Much is said about the advantages

Vandolf *v.* Otis.

to the country of a decision against the right of Indian wives to hold under the donation act. Doubtless it would be better if land so held belonged to white men ; so it would be better if the lands of the indolent were in the hands of the industrious; but such considerations, if worthy of notice at all, cannot weigh against the plain meaning and effect of the statutes. These views, it is believed, comport with those taken of this question by the land department of the government.

Established constructions of the donation act, under which persons in good faith have acquired rights, ought not to be suddenly changed to the destruction of such rights, unless for more important reasons than appear in this case. Indian women, as the wives of white men, and the offspring of such marriages, are unavoidably a part of our people, and it is better that they should have property and homes, than that they should be worthless and wandering vagabonds in the country.

Reference is made to the provision for " American half-breed Indians," as showing an exclusion of all other Indians from the benefit of said act. No other Indians, it is true, can take as settlers, under said act; but married women, let it be remembered, take as " wives " and not as " settlers." Some doubt remains as to whether the south half of plaintiff's claim has been set apart to his wife or not; but, in any event, plaintiff is entitled to the possession and use of said lands. It is therefore ordered, that the injunction heretofore granted in this case be made perpetual, and that defendant be forever restrained from committing waste or trespassing upon the land described in plaintiff's petition.

Judgment for plaintiff.