## Case No. 8,021.

### LAMB et al. v. STARR et al.

[Deady, 350.] [1]

*Circuit Court, D. Oregon. Jan. 31, 1868.*

OREGON DONATION ACT — POSSESSORY RIGHTS — HEIRS OF POSSESSOR—WIFE'S INTEREST—PLEADING AT LAW—SPEAKING DEMURRER.

1. It need not be stated in a pleading, that an alleged trust concerning lands was created by writing, and it will be presumed to have been so created until the contrary appears; the statute of frauds. which requires such trusts to be created or evidenced by writing, is a rule of evidence, but not of pleading.

[Cited in Lewis v. Oregon Cent. R. Co., Case No. 8,329; Green v. Coos Bay Wagon-Road Co., 23 Fed. 70.]

2. A demurrer which states a fact not appearing on the face of the pleading demurred to, is a speaking demurrer, and will be overruled.

3. A grant under section 4 of the donation act (9 Stat. 497), to the children of Nancy Lownsdale, the wife of a settler under such section, includes the children of said Nancy, by a prior husband.

4. The donation act does not declare who are the heirs of a settler or his wife, under section 4 thereof. upon the death of either, before the issuing of a patent, and the grant over in case of such death to the "children or heirs" of such settler or wife. ought to be construed to take effect first in favor of the former.

[Cited in Mizner v. Vaughn. Case No. 9,678; Cutting v. Cutting. 6 Fed. 267.]

[Cited in Caldwell v. Miller, 44 Kan. 14, 23 Pac. 949.]

5. Under the donation act. a settler upon the public lands in Oregon, might change his location and settlement as often as he saw proper, before making final proof and receiving a certificate, and in case of his death before the completion of his residence and cultivation, his widow might abandon her interest in his donation. and by becoming the wife of another settler, be entitled to receive one half of the donation of the latter husband.

[Cited in Stevens v. Sharp. Case No. 13,410; U. S. v. Tichenor, 12 Fed. 421; Shively v. Welch, 20 Fed. 34.]

---

1 [Reported by Hon. Matthew P. Deady. District Judge, and here reprinted by permission.]

6. The donation act does not include settlers upon the public lands, who died before its passage—September 27, 1850.

[Cited in Fields v. Squires, Case No. 4,776.]

7. Where the title of the complainant, whether legal or equitable, is not doubtful or suspicious, equity will take jurisdiction and decree partition, whether the complainant be in the actual possession or not; but in the case of an alleged legal title, if either of these objections appear, it is usual to send the complainant to a court of law, to try his title, and retain the suit to await the result; and in case of an equitable title a court of equity first ascertains the title, and if found for the complainant, then makes partition.

[Cited in Traver v. Tribou, 15 Fed. 34; Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 567.]

8. The possession of one tenant in common, is that of his co-tenant, and where possession is necessary, such co-tenant may maintain a suit for partition upon such possession.

9. In equity a defendant is not entitled to plead more than one plea, without leave of the court, and such leave will only be given when the necessity therefor is obvious.

[Cited in Newby v. Oregon Cent. R. Co., Case No. 10,145.]

[This is a suit in equity for partition of certain real estate in the city of Portland, Oregon, brought by John R. Lamb and Emma, his wife, and Ida Squires, heirs of Nancy Lownsdale and D. H. Lownsdale, against Lewis M. Starr and the heirs other than plaintiff of D. H. Lownsdale, to wit, J. P. O. Lownsdale, Millard O. Lownsdale (by guardian), Ruth A. Lownsdale (by guardian), Mary E. Cooper, Hiram Smith, and Hannah Smith. The case is now heard upon demurrer and pleas to bill.]

W. W. Page and W. Lair Hill, for complainants.

W. W. Chapman, for defendant Starr.

DEADY, District Judge. This is a suit for partition of block 218, situate in the city of Portland, and to declare void a purchase thereof by the defendant, Starr, because the conveyance was taken by Starr, with notice, and in violation of certain trusts with which the property was charged in the hands of Starr's grantors. Among other things the bill states, that on April 15, 1854, Nancy Lownsdale died seized of an estate in fee in the west half of donation claims 40 and 66, containing 90 acres of land and embracing block 218 in the city of Portland, leaving as her heirs-at-law, her four children, William Gillihan, Isabella Ellen Gillihan, Millard O. Lownsdale and Ruth A. Lownsdale, and her husband, Daniel H. Lownsdale, each of whom was thereupon entitled and became seized of an undivided one fifth of said west half including said block. That in January, 1860, the said Daniel H. purchased from said Isabella Ellen, her interest in the estate of her mother, Nancy Lownsdale. That on April 1, 1858, said Daniel H. conveyed by deed of quit claim, without covenants, all his interest in block 218, to Lansing Stout, upon trust, that the said Stout would raise money upon said interest to pay the debts of said Daniel

H.; and that on the same day and year, the said Stout, for the purpose of enabling Alonzo Leland to assist him in the performance of said trust, conveyed to said Leland by deed of quit-claim, an undivided one half of his interest in said block upon the trust aforesaid. That on December 12, 1863, upon an execution issued out of the circuit court for the county of Multnomah, state of Oregon, against the property of said Stout, said block was sold to the defendant, Starr; and that on December 5, 1864, the said Leland in conjunction with his wife, on his own private account and not in pursuance of said trust, conveyed to the defendant, Starr, his interest in said block; and that at the time of both such purchases by the defendant, Starr, he had full notice of the trust, and well knew that Stout and Leland had no interest in such block except as trustees, and that neither such sales or conveyances to him were made or executed in pursuance thereof. That on May 4, 1862, Daniel H. died intestate, leaving as his heirs-at-law, Emma Lamb and Ida Squires, the children of his daughter Sarah, previously deceased, and his four surviving children, namely: James P. O. Lownsdale, Mary E. Cooper, Millard O. Lownsdale and Ruth A. Lownsdale, who thereupon were entitled and became seized in fee of an undivided two fifths of the said west half including said block. That the said heirs of Daniel H. and of said Nancy being seized as tenants in common of said west half, William Gillihan, one of the latter, commenced a suit for partition thereof in the circuit court for the county of Multnomah, state of Oregon, in which suit the parties to this suit and divers others were defendants; and that said court, on May 22, 1865, among other things, decreed, that said Daniel H. in his lifetime was entitled to the one fifth of said west half as the heir of said Nancy, and also to another fifth as the vendee of said Isabella Ellen, one of the heirs of said Nancy, and that said William Gillihan, Millard O. and Ruth A. Lownsdale, were each entitled, as the heirs of said Nancy, to one fifth of said west half; and afterwards, on August 12, 1865, said court, in said suit, by its decree set apart to said William, Millard O. and Ruth A. in severalty, certain specified parts of said west half, and to the heirs and vendees or claimants under Daniel H. according to their respective interests, the remaining portion of said west half, including block 218; and that by reason of such partition being unequal, it was further provided by said decree, that said William, Millard O. and Ruth A. should have a lien upon the portion of said west half set apart to the heirs, etc., of Daniel H., amounting in the aggregate to the sum of $39,156.02, of which sum $1,533.45 was apportioned to said block 218 and decreed to be a lien thereon; and that by reason of such decree and partition, the said heirs of Daniel H. became the owners in fee of the other three fifths of said block, subject to the lien aforesaid. That

said lien has been paid by the defendant Lewis M. Starr and the heirs of Daniel H.; and that said heirs are tenants in common of said block, and are in possession thereof. That the defendants, Hiram and Hannah Smith, claim some right in said block, of which complainants have no knowledge or information. That the complainants are entitled to an undivided one fifth of said block, and that the other heirs of Daniel H. are entitled to one fifth each, subject to the claims and interest, if any, of said Starr, and said Hiram and Hannah Smith. That the complainants are residents and citizens of the state of Kentucky, and that their interest in said block exceeds in value the sum of five hundred dollars. The defendant, Starr, demurs to so much of the bill as sets up the trust to Stout and Leland and the violation thereof by the sales to him. To the remainder of the bill he pleads three pleas in bar of the right to the partition prayed for.

The first and fifth causes of demurrer may be considered together. They are, substantially, that it does not appear from the bill that the alleged trust was in writing, and subscribed by either Lownsdale, Leland, or Stout. The Oregon statute (Or. Code, 341) prescribes that no trust in real property can be created otherwise than by operation of the law or an instrument in writing, subscribed, etc. For the demurrer it is maintained that the bill must show affirmatively that these alleged trusts were created by writing. But the rule of law appears to be otherwise. At common law a trust in real property could have been declared or created by parol. Since the statute (Car. II, c. 3, § 7) required such trusts to be in writing, it has been uniformly held that the statute did not change the rules of pleading, but only introduced a new rule of evidence. That it was still competent to declare or count upon contracts within the statute according to their legal effect, without alleging that they were in writing. If the defendant wishes to take advantage of the statute he must plead it. The demurrer is deemed to confess the trust, as being in writing. however the fact may be. Gould, Pl. c. 4, § 43, 44, 45; Chit. Pl. 254, 332. True, these are works which treat of pleadings at law, but I do not find any different rule laid down for pleadings in equity. Throughout Story's Equity Pleadings, it is constantly assumed that a contract within the statute of frauds may be stated in a bill according to its legal effect, and until the contrary appears, it will be presumed to be in writing. And the same work declares that a plea of the statute of frauds is the proper mode of putting in issue the fact of whether the contract was in writing or not. Story, Eq. Pl. §§ 761, 762, 765. In Harris v. Knickerbacker, 5 Wend. 643, Mr. Justice Marcy lays down the rule in equity as follows: "I apprehend that it is now settled, that if the defendant admits the agreement and insists on the statute, he can protect himself from

a decree for specific performance, notwithstanding his admission; but if he admits the agreement, but neither pleads the statute nor insists on it in his answer, he is deemed to have renounced the benefit of it. 6 Ves. 39. If the bill states generally a contract which the law requires to be in writing, the court will presume that it was made with the requisite formalities, to give it validity until the contrary appears. The defendant, in answering, may either plead that the contract was not in writing, or insist upon that fact in his answer. If he meets the allegations of a contract in his bill with a general denial, and the complainant is put to his proof to establish it, he must show a written contract; and if he does not, the evidence to establish the issue will be adjudged incompetent." See, also, 1 Smith, Ch. 225. The demurrer in this respect is not well taken. The second cause of demurrer states that it does not appear but that Stout and Leland applied the proceeds of the sale of the block to the payment of the debts of Daniel H. The bill states that Leland sold and conveyed his interest in the block to Starr on his own private account and in violation of the trust, and that Stout's interest was taken and sold on an execution against his property. From this statement it is plain that the proceeds of the sale did not go to pay the debts of Daniel H., but rather to the payment of those of Stout and Leland.

The third cause of demurrer states that it does not appear but that the debts to be paid were due Stout and Leland. So far as it appears, no debts were due Stout or Leland. The trust reposed on Leland was by Stout, not Daniel H. If in fact debts were due Stout, and the conveyance was in trust, that he would use or dispose of the property to pay such debts, the defendant must, if he think them material, plead these facts before he can claim the benefit of them. This part of the demurrer in some sort asserts that Daniel H. was or might have been indebted to Stout and Leland, and that this trust was created for the purpose of enabling the trustees to pay such debts. In this view it is liable to the imputation of being a speaking demurrer—that is, a demurrer where a new fact is introduced to support it. Story, Eq. Pl. § 448.

The fourth cause of demurrer states that the sales to the defendant Starr, do not appear to have been in violation of the alleged trust. The bill alleges that these sales were in violation of the trust, and the facts disclosed in the bill warrant the allegation of the bill. The trust was to pay the debts of Daniel H. generally, and the sales to Starr were to pay the debts of Stout and Leland. The demurrer is overruled at the costs of the defendant.

The first plea alleges that the defendant Starr, claims under Lansing Stout, to whom Daniel H. conveyed in April, 1858, as in the bill mentioned, and that at the commencement of this suit the complainants were not in the possession of the premises in question,

but that said defendant was in sole and exclusive possession thereof. The second plea alleges that the said Nancy did not die seized of the west half of the donation claim in question nor could she take any part thereof as the wife of Daniel H. because prior to her marriage with said Daniel H. and while she was the wife of William Gillihan, the said William, in the year 1847, settled upon a tract of the public land on Sauvie's Island, in Multnomah county, containing 640 acres, and continued to reside upon and cultivate the same continuously to the time of his death in the year 1850; and that said William, up to the time of his death, complied in all respects with the provisions of the act of September 27, 1850, making donations to settlers upon public lands, etc., whereby upon the death of said William, the same vested in said Nancy and the heirs of said William, and thereby the said Nancy became disqualified to take any part of the donation claim of Daniel H. The third plea alleges that William Gillihan and Isabella Ellen Gillihan are not the children and heirs-at-law of Nancy, to whom the said west half was patented; and that said William and Isabella Ellen did not in virtue of said patent referred to by complainant, become seized of any part of said Nancy's half of said donation claim. By section 4 of the donation act (9 Stat. 497), there is granted to a married man, who is a settler upon the public land, the quantity of 640 acres, "one half to himself and the other half to his wife, to be held in her own right." The section also provides, that where such married persons have complied with the provisions of the act so as to entitle them to the grant as therein provided, "whether under the late provisional government of Oregon or since, and either shall have died before patent issues, the survivor and children or heirs of the deceased, shall be entitled to the share or interest in equal proportions, except," etc. The question sought to be raised by this third plea is that only the children of Nancy by Daniel H., the surviving settler, are entitled to any portion of her interest or share in the donation, and that therefore William and Isabella Ellen, the children of Nancy by her marriage with Gillihan, are not entitled to any interest in the block in question.

The first position assumed by counsel in favor of his position is, that the patent or grant to the children of Nancy Lownsdale, does not include the children of Nancy born while she was Nancy Gillihan. In reply to this, it is sufficient to say, that when Nancy Gillihan changed her name to Nancy Lownsdale, it did not affect her identity or destroy the parental relation between herself and the children which she bore while called by the former name. A grant to the children of Nancy Lownsdale must include all the children of the person intended and described by this appellation. The name used is the mere description of the person of the ancestor, and does not impute to Nancy any particular status or relation on account of which her children born during the existence of that status or relation should take the land of the deceased, to the exclusion of her other children, not so born. A grant to the children of the wife of Daniel H. Lownsdale under some circumstances might probably be limited to the children born of the wife during the existence of the relation imputed to her in the grant; but a grant to the children of Nancy Lownsdale is not limited by the fact that she was the wife of Daniel H. Lownsdale, to the children born during the existence of that relation.

Another argument in support of this plea assumes that the donation is made to the community constituted by the marriage, rather than to the married persons individually, and that, therefore, in case of the death of either member of this community, the share of such deceased member in the common donation, should only go to the children of such community who made the settlement and performed the services which secured the grant. The idea is not without plausibility and apparent equity and justice. But the statute cannot be so construed without doing violence to its evident purpose and plain language. The act does not give the land to the community constituted by the marriage, but to the married persons individually—"one half to the husband and the other half to the wife, to be held by her in her own right." Besides, at common law, marriage does not constitute a community in which the individuality of the husband and wife is merged and blended for the time being. Such, or something like it, is the doctrine of the civil law, but is not applicable here. Upon the death of the wife, before the issuing of the patent, the donation act disposes of her share in the donation, by providing that it shall go to her husband and children or heirs in equal proportions. This description of the persons who are to take the share of Nancy in the donation is plain and unequivocal. The words used are not open to construction. The share is given to her children without limitation or qualification. William and Isabel Ellen Gillihan are as much the children of the deceased Nancy as Millard O. and Ruth A. Lownsdale. Being her children, the donation act gives them a proportionate interest in her share of the donation, without reference to the fact of when they were born or by whom begotten. This conclusion does not involve the question of whether the words children or heirs are used in the act as synonymous terms or not. My impression is that they are not, although, as in this case, they may coincide and apply only to the same persons. At the death of Nancy—April 15, 1854—there was no statute in Oregon regulating the descent of real property, or declaring who should be the heirs of an intestate, and therefore the subject was regulated by the common law. By this rule her children were her heirs. The donation act does not prescribe who shall be considered the heirs of a deceased settler

any more than it prescribes who shall be considered the wife of a settler. Both these are left to the local law—the law of Oregon. If the law of Oregon at the time of Nancy's death had prescribed that brothers and sisters should be heirs to the intestate either exclusive or inclusive of the children, it appears to me, that under the donation act, then the children would take to the exclusion of the brothers and sisters. Congress seems to have intended to secure the share of the deceased to her children, if any, whether the law of Oregon made them heirs or not. Beyond this it left the matter to the local law, by providing the alternative, that in default of children, such share should go to her heirs, whoever they might be. Who would be entitled to claim as heir of the deceased would in all cases depend upon the law of Oregon at the time of the death, but persons claiming as children are by the donation act preferred to those claiming simply as heirs by the local law. It will be noticed that the plea denies the right of William as well as of Isabella Ellen. The former is not a party to this suit, nor do either of the parties before the court claim under him. But if neither had any right in the share of their mother, then Daniel H., as survivor, would take one third instead of one fifth. The interest which Daniel H. took as survivor, Starr claims under the conveyance to Stout and the subsequent conveyance to himself. Neither is Isabella Ellen a party to this suit, but the complainants claim an undivided interest in the one fifth which their ancestor, Daniel H., is alleged to have purchased from her, subsequent to this conveyance to Stout. As to these interests, the plea, if good in law, would be a bar to the relief sought by the complainants. The plea is insufficient in law and therefore overruled.

The second plea assumes that the fourth section of the donation act, includes settlers upon the public lands who died in Oregon before its passage—September 27, 1850. At least the plea must be so construed; for, although the averment is that Nancy's first husband—Gillihan—died "sometime in the year 1850," yet this being uncertain in point of time, must be taken most strongly against the party making it. So construed, the legal effect of the allegation is, that Gillihan died some time in 1850, but prior to September 27 of that year. In support of this plea, it is maintained by Starr's counsel, that Gillihan having died in the possession of the land claim on Sauvie's island, his wife became entitled to one half thereof in her own right, and therefore she was not qualified to take another donation as the wife of Daniel H. The disqualification relied on is found in the proviso to section 5 of the donation act. It reads, "That no person shall ever receive a patent for more than one donation of land in said territory in his or her own right." Admitting for the moment that Nancy became entitled to the half of the Gillihan donation claim upon the death of the settler, it does not appear that she ever obtained a patent for it, or took any steps to assert such right in the proper land office of the United States, or elsewhere.

It has always been understood, and there is nothing in the donation act to the contrary, that a settler upon the public lands, might change his location and settlement as often as he saw proper, before he filed his notification of selection in the land office, and probably at any time before making final proof and receiving a certificate. In such case the first location is abandoned and the land is open to any other settler who may choose to take it up. A wife cannot become a settler and take land for herself independent of her husband. While he lives, her action in this respect is subordinate to his. But if, upon the death of the settler, the wife becomes entitled to take one half of the land upon which he died, pending the performance of the condition of residence and cultivation, she may then abandon that right, and by becoming the wife of another, be qualified to take her share in the donation of the latter husband. In such case, it is certain, that she will never receive a patent for more than one donation, for as to the settlement of the former husband, she does not claim any interest in it or make proof of any right thereto. Again, it appears by the plea, that Gillihan died before he had "complied with the provisions of the act"—his settlement commencing in 1847, and his death occurring in 1850, before the completion of the four years residence and cultivation. If it be the law, as this plea assumes, that the grant in section 4 of the act is not confined to persons in being at the passage of the act, but that it includes settlers upon the public lands prior thereto, yet, at least, such settlers must have completed the four years residence and cultivation required by the act, before it can be claimed that "they have complied with the provisions of this act so as to entitle them to the grant as above provided." 9 Stat. 497. Certainly, there is no provision of the act which disposes or gives to any one the land occupied by a settler, who died before the completion of the four years residence and cultivation, and prior to the passage of the act. Section 8 does not help the plea in this respect, for that manifestly contemplates only the case of the death of a settler after the passage of the act. "To give that section any other than a prospective operation is to do violence to its language; and the mischief resulting from giving it a retroactive effect, would be infinitely greater than would follow from a like construction of section 4." Ford v. Kennedy, 1 Or. 168. As has been already stated, this plea assumes that section 4 of the donation act includes settlers upon the public lands who died in Oregon before the passage of the act. If the act does not warrant this assumption, then this plea is insufficient, without reference to the

points already considered. As the section stands, its length and the multiplicity and variety of provisions and qualifying clauses which it contains, not affecting this question, naturally tend to obscure the actual connection and dependence which exist between those different parts of it, that prescribe who may take under it. Read with these, at present immaterial clauses eliminated, the section declares: "That there shall be and hereby is granted to every white settler or occupant of the public lands, * * * now residing in said territory (Oregon), and who shall have resided upon and cultivated the same for four consecutive years, * * * if a married man, * * * the quantity of one section, * * * one half to himself and the other half to his wife, to be held by her in her own right; * * * and in all cases where such married persons have complied with the provisions of this act, so as to entitle them to the grant as above provided, whether under the provisional government of Oregon, or since, and either shall have died before patent issues, the survivor and children or heirs of the deceased shall be entitled to the share or interest of the deceased in equal proportions." It is only necessary to read the section carefully to see that the "such married persons," must refer to the antecedent —a settler upon the public lands now residing in said territory, and his wife—whoever and wherever she may be. This settles the question against the plea. Gillihan was dead when the act passed. No grant is made to the dead husband, nor does any enure to his widow. The woman only takes on account of her wifeship, and not as a settler. Vandolf v. Otis, 1 Or. 156, 157. The words, "and if either shall have died before patent issues," are easily reconciled with this conclusion; and if there is any difficulty in so doing, they must yield to the clear and unqualified language descriptive of the person to whom the grant was made, or offered. The subsequent provisions of the section providing for the disposition of the donation upon the contingency of the donee's death before the issuing of the patent, cannot be allowed by implication to enlarge the terms of the grant. The act contemplates and provides for the issuing of a patent to the settler and his wife at some future time. In the meantime, and after the performance of the conditions prescribed by the act, the settler or his wife might die. In contemplation of this contingency, which might happen before the issuing of the patent, both events being in the future, the section properly and grammatically declares, "and if either (the settler or wife) shall have died before patent issues, the survivor and children or heirs of the deceased, shall be entitled to the share or interest of the deceased, in equal proportions." This is the construction which was given to this section by the supreme court of the late territory of

Oregon in Ford v. Kennedy, supra; and I think the decision in that case has been generally accepted as correct, by the profession. The evils which would have resulted from a contrary construction are not exaggerated in the following citation from the opinion in that case by Ch. J. Williams: "To construe the donation act so as to invest persons, dead before its passage, with an inheritable interest in the public lands of this territory, would be not only to give the said act a retrospective operation, contrary to a sound construction of the statute, but to open a Pandora box of evils upon the community; for the heirs of these early settlers, who died before 1850, would rise up with their unknown and undiscoverable titles to supplant others who found the land, thus claimed, vacant, and took it, in good faith, as a part of the public domain." This plea is insufficient and must therefore be overruled.

The first plea assumes that a party not in possession cannot maintain a suit in equity in this court for partition. The ground of this objection is section 419 of the Civil Code (Or. Code, 255), which enacts that "persons who hold and are in possession of real property as tenants in common," may maintain a suit in equity for partition. Counsel for the defendant argues that this statute limits the jurisdiction of this court, as a court of equity. No authority was cited in the support of this position, but section 34 of the judiciary act (1 Stat. 81) seemed to be relied upon. This section provides that "the laws of the several states, * * * shall be regarded as rules of decision in trials at common law, in the courts of the United States, where they apply." But this section, as its language plainly imports, does not extend to suits in equity, and it has even been construed not to extend to criminal cases at common law. U. S. v. Reid, 12 How. [53 U. S.] 363. The jurisdiction of the courts of the United States in equity is not affected by the statutes of the state. Robinson v. Campbell. 3 Wheat. [16 U. S.] 222; U. S. v. Howland. 4 Wheat. [17 U. S.] 115. In this last case Chief Justice Marshall says: "As the courts of the Union have a chancery jurisdiction in every state, and the judiciary act confers the same chancery powers upon all, and gives the same rule of decision, its jurisdiction in Massachusetts must be the same as in other States." See, also, Russel v. Southard, 12 How. [53 U. S.] 147. In Neves v. Scott, 13 How. [54 U. S.] 272, the supreme court say: "Wherever a case in equity may arise and be determined, under the judicial power of the United States, the same principles of equity must be applied to it, and it is for the courts of the United States, and for this court in the last resort, to decide what those principles are, and to apply each of them to each particular case, as they may find justly applicable thereto. * * But in all the states, the equity law, recognized by the constitution

and by acts of congress, and modified by the latter is administered by the courts of the United States, and upon appeal by this court."

The equity jurisdiction of this court not being limited by section 419 of the Civil Code, the right of the complainants to maintain this suit for partition against Starr, depends upon the general principles of equity jurisprudence. The jurisdiction of a court of equity over a suit for partition, so far as I have been able to ascertain, never did depend upon the possession by the complainant. Where the title of the complainant, whether it be legal or equitable, is not doubtful or suspicious, equity will take jurisdiction and decree partition, without reference to the question of possession. But in the case of an alleged legal title, when either of these objections appear, it is usual, first to send the complainant to a court of law to try his title, and in the meantime retain the bill to await the result. In the case of an equitable title the court of equity first ascertains the title, and if found for the complainant, proceeds to make partition. Wilkin v. Wilkin, 1 Johns. Ch. 117; Coxe v. Smith, 4 Johns. Ch. 276; Matthewson v. Johnson, Hoff. Ch. 562; 4 Kent, Comm. 364. But even if the possession by the complainants was necessary to enable them to maintain this suit, they must be deemed to be in possession. The possession of one tenant in common is that of his co-tenants. Hitchcock v. Skinner, Hoff. Ch. 24. This decision was made under a statute word for word like ours. In Brownell v. Brownell, 19 Wend. 369, the court in commenting upon the same statute, say: "Possession would follow the legal title, no adverse possession having been shown. The provisions of the statute * * * do not require a pedis possessio to entitle a party to institute proceedings in partition."

In this case, the plea under consideration states that the defendant is in the exclusive possession, but it also discloses the fact that his right to the possession depends upon the deed of Daniel H. to Stout, and the mesne conveyances thereafter to himself. The plea is not accompanied by an answer denying the trust upon which that deed was made to Stout and his own knowledge of it, when he acquired the title conveyed to Stout. For aught that appears in the plea, Starr may simply hold the legal title to the interest conveyed to Stout in trust for the complainants. But waiving this consideration, as the matter now appears, there can be no pretense that Starr acquired any other interest in the block, than Daniel H. conveyed to Stout. The plea does not claim any more than this. Yet two years after the conveyance to Stout, Daniel H. purchased the interest of Isabella Ellen in the estate of her mother. This was an undivided one fifth. This interest descended to the complainants in common with the other de-

fendants, heirs of Daniel H. The deed to Stout was a simple quitclaim without covenants, and does not affect the after acquired interest of Daniel H. Allowing Starr then all the interest which he can or does claim by virtue of the conveyance to Stout, the complainants are at least seized of an undivided interest in the block. They and he are tenants in common, and his possession is theirs for the purpose of this suit. Barnard v. Pope, 14 Mass. 437. This plea being insufficient must be overruled. As a matter of practice, it is proper to add that in equity a defendant is not allowed to plead more than one plea to the bill, without special leave of the court first obtained, and such leave will only be given in particular cases, when the necessity therefor is obvious. Story, Eq. Pl. § 657. In this case no objection was made by the complainants, and the pleas were treated as if pleaded with leave of the court.

[NOTE. This case was afterwards heard upon bill, answer, and proofs taken, and a decree entered adjudging to Starr one-fifth interest in the property, with provision to secure to him the repayment of owelty. Case No. 8,022. There was another case decided subsequently, involving the title to the estate of Nancy Lownsdale, brought by these same plaintiffs against T. J. Carter, Isaac B. Smith, and the heirs other than plaintiffs of D. H. Lownsdale. Lamb v. Carter, Case No. 8,013. Suits were brought also by the same plaintiffs, as heirs of D. H. Lownsdale, against the remaining heirs and certain other parties claiming some interest in the Lownsdale tract. Cases Nos. 8,012, 8,017, 8,024, 8,015, 8,023.]