## ELLEN MURRAY, APPELLANT, *v.* MARY ANN MURRAY, RESPONDENT.

EVIDENCE—DEPOSITION.—It being material in a suit in equity to prove a marriage, a deposition taken in another proceeding between different parties to prove the same marriage was offered in evidence: *Held*, that such deposition does not come within section 819 of the Civil Code, and is not admissible.

EVIDENCE—MARRIAGE, PRIMA FACIE PROOF OF.—When it is shown by evidence that a man and woman are living together and cohabiting as man and wife, are so reputed in the community, and are received in society as such, it is sufficient *prima facie* to prove the marriage in a civil action or proceeding.

PLEADING—JUDGMENT OR DECREE—MUST BE PLEADED TO BE ADMISSIBLE IN EVIDENCE.—To maintain her suit, plaintiff was required to prove that Winnifred and John were man and wife. To disprove such relation the defendant offered in evidence a decree of divorce between them: *Held*, that such decree, not having been pleaded in the answer, could not be received in evidence; that in a suit in equity any matter which is a defense should be pleaded in the answer when there is an opportunity to so plead it.

WIFE—RIGHTS OF UNDER DONATION ACT, HOW ACQUIRED.—Under the act of congress known as the "Donation Act," the right of the wife in the donation becomes perfected on the completion of the settlement and cultivation. She has nothing to do to secure the donation except to be a wife.

PLEA IN ABATEMENT—WAIVER.—The party by whom the suit was brought having died, and the plaintiff, her legatee, having been substituted for the deceased without objection in the court below, and objection being now made that such substituted plaintiff has not been appointed executrix by a court of this state, and can therefore have no standing in court, it was *held*, that such objection should be taken by plea in abatement, and not having been so taken is waived; 2. That such substituted plaintiff, as the legatee of the deceased is her successor in interest to the subject-matter of the suit, and is therefore authorized under the code to prosecute the suit.

THIS suit was originally brought by Winnifred Murray against Mary Ann Murray, the respondent. During the pendency of the suit Winnifred died, and the suit has been continued in the name of her legatee and executrix, the appellant.

The complaint alleges that on May 1, 1854, and long prior to that time Winnifred was the wife of one John Murray, and that she continued so to be until his death in 1852. That on the first of May, 1854, John Murray, being a citizen, and capable of taking a donation land claim under the act of congress of September 27, 1850, made actual settlement upon a certain described tract of land; that he continued to reside on and cultivate said land for four years or more, and made due final proof of his residence and cultivation, and on March 22, 1870, received a patent certificate therefor; that in such certificate the east half of the land was designated as the part enuring to the husband, John Murray, and the west half as enuring to the wife; that since the issuance of the certificate a patent has been issued thereon. That she, Winnifred, being the wife of John Murray, is the owner of the land so designated as the wife's, and that said patent should have been issued to her. That through the fraudulent acts of Mary Ann, the respondent, who falsely pretended to be the wife of John Murray, the patent was issued in fraud of Winnifred's rights to Mary Ann. The material question is as to which of the parties, Winnifred or Mary Ann, was the wife of John Murray, at the date of the settlement, residence and cultivation.

On the trial the court below, Mary Ann, the respondent, offered in evidence a decree of divorce procured by John Murray against Winnifred in an Indiana court, prior to the date of the settlement, which was admitted.

The respondent had a decree in her favor, whereupon this appeal was taken.

*F. A. Chenoweth*, for appellant.

*J. M. Thompson and R. S. Strahan*, for respondent.

By the Court, BOISE, J.:

The questions presented arise on the evidence and the objection thereto on the trial. To prove the marriage of John and Winnifred Murray, the deposition of said Winnifred is now offered in evidence. Said deposition was taken and used in evidence to prove this same marriage in the case of Thomas Murray against the respondent *et al.*, which was an action of ejectment commenced by said Thomas (who was alleged to be the son of said John and Winnifred) to recover his portion of his father's half of this same land claim; though it appears that this deposition was taken as evidence in that case to prove the marriage of John and Winnifred, which was in issue in that case. It was not taken in a suit or proceeding between the parties to this suit, nor are the parties to this suit the representatives of the parties in that action, and it does not come within the provisions of section 819 of the code; and we think this deposition of Winnifred Murray cannot be used as evidence in this suit, and we will therefore disregard it.

We will now consider the other evidence in this case tending to prove this marriage. Thomas Murray testifies that he is a son of John and Winnifred Murray; that his father and mother lived together as man and wife, and recognized each other as such until he grew up, and that there were other children besides himself belonging to the family, and recognized by said John and Winnifred as their children. That about 1849, his father and mother had a difficulty about the intimacy of his father and the respondent, who was then Mary Ann Allen, and that after that and up to about 1852, his father contributed to the support of his mother and the family, who were then living in the city of Chicago. That after about 1852, his father went away, and the next he knew of him was about 1864, when he returned to Chicago, and for a while lived and cohabited with said Winnifred, and recognized her as his wife and the children as his.

Ellen Murray, a daughter of the parties, also testifies to about the same as the last witness to the reputation and cohabitation of John and Winnifred as husband and wife.

Another daughter, Jane McLoughtin, also testified to the reputation and cohabitation of the parties as man and wife for years before 1852, and afterwards for a short time on his return in 1864. Catharine Hamilton, Mary Green and others testify as to John Murray's return to Chicago in 1864; living with and recognizing Winnifred as his wife. Other witnesses testify to facts tending to show that John Murray and Winnifred lived together and were recognized as husband and wife for many years. And as to the reputation of marriage and the long cohabitation of the parties, the evidence is sufficient to establish these propositions.

It also appears that Mary Ann Murray, the respondent, knew John and Winnifred before their separation about 1852, and that they were recognized as married persons, and had a family of children; and she herself so recognized them, and made an affidavit in which she swore that she knew Winnifred Murray as the wife of John, and that said Winnifred was not residing in the state of Indiana. When it is shown by evidence that a man and woman are living together and cohabiting as man and wife, and are in the community reputed and received in society as such, it is sufficient *prima prima* to prove the marriage in a civil action or proceeding. Civ. Code, 262, sec. 30; 1 Bishop on Marriage and Divorce, 436, 438; Reeves's Domestic Relations, 401. But it is claimed by the respondents that if the marriage of John Murray and Winnifred is proved, that the marriage was annulled by the decree of a court of competent jurisdiction in the state of Indiana rendered in August, 1852, and before the marriage of John Murray and Mary Ann, which was found to have been solemnized in 1852. And a copy of such decree of divorce was received in evidence in the court below, and has been offered in this court. This decree is not pleaded in the answer, and the appellant claims that it being a complete defense in this suit, if a valid decree, must be pleaded to be relied on as a defense.

It is a rule that where any matter which is a defense to a suit in equity it should be pleaded in the answer, if there is an opportunity to so plead it. (1 Van Santvoord Pl. 470–475, 496; 2 Estee, 917; Gould's Pl. 316–319.)

If this was a matter within the knowledge of the defendant, and defendant intended to rely on it, she should have pleaded it in her answer, which would have given the plaintiff an opportunity to reply to it, and set up any matter in evidence of it which he might have; such as want of jurisdiction or fraud in obtaining it. We think, therefore, that this decree cannot be received in evidence to prove that John and Winnifred Murray were divorced at the time of the marriage between John Murray and Mary Ann. This view of this question renders it necessary for us to consider in the determination of this case the various other questions argued by counsel with reference to the right of the plaintiff to impeach this decree for want of jurisdiction of the court granting it, as for fraud; unless the same may be considered in determining the equity of the case arising, as claimed by counsel for respondent, from the fact that Mary Ann had thought herself to be the lawful wife of John Murray; and that, while living with her as such, he resided on and cultivated this claim during the time required by the act of congress for securing the title thereto; and that she, and not Winnifred, had borne the privations and hardships of the settlement; and that she and her children, as the heirs of said John Murray, are now occupying it as their inheritance.

The land, by the act of congress, belonged to the wife of John Murray. Her right became perfected on the completion of the settlement and cultivation. She had nothing to do to secure this donation from the government, except to be a wife. (*Otis* v. *Vandolf,* 1 Or. 153.) Before the patent was issued, her title was perfect in equity, and could not be defeated but by her own act. A court of equity has no power to take, by its decree, this land from her, and bestow it on another, because it is an equitable estate; for a valid estate in equity is just as sacred and indefeasable as a legal estate. Being the wife of John Murray, she was the only person who could lawfully take the land, and she or her successors must hold it until legally divested by their own act or deed. It is also claimed that the plaintiff in this case being an executrix of Winnifred, and substi-

tuted since her death, that she can have no standing in this court as a party plaintiff, being appointed such executrix in the state of Illinois, and not in this state. It appears by the record that after the death of Winnifred Murray, the original plaintiff in this suit, it was made to appear to the circuit court that said Winnifred was dead; that this plaintiff, Ellen Murray, was her sole executor and legatee and her successor in interest to this land in dispute. A motion was made to have her substituted for said deceased, and the motion seems to have been allowed by the court without objection by the respondent.

This being an objection that Ellen Murray is not a proper party plaintiff should be taken by a plea in abatement of the suit, and is waived by proceeding with the trial without the interposition of such an objection. But were this not correct, the statute says that suits like this shall not abate, and may be prosecuted in the name of the personal representative or successor in interest of the deceased; and it appears that this plaintiff is not only the executrix but the legatee, and consequently the successor in interest to the subject-matter of this suit. She is, therefore, the person named in the statute, and is authorized to appear and prosecute this suit in her name. (Civil Code, sec. 37.)

From these considerations it follows that the decree in the court below in this case must be reversed, and that the plaintiff have a decree as prayed for in her bill.