[No. 651.  Decided January 17, 1893.]

CHARLES KELLEY, *Respondent*, v. COUNTY OF KITSAP AND THEODORE WILLIAMS, *Appellants*.

APPEAL — PARTIES — FAILURE OF ONE TO PERFECT — MARRIAGE — COHABITATION WITH INDIAN WOMAN.

The failure of one appellant to perfect his appeal will not affect the rights of another appellant in the same cause who has perfected the appeal on his part.

Where a white man procures an Indian woman to live with him on the payment of a few dollars to her relatives, no marriage ceremony being celebrated, the issue of such a union is illegitimate and incapable of inheriting the father's estate.

*Appeal from Superior Court, Kitsap County.*

*F. D. Fuller*, *William S. Church*, and *Struve & McMicken*, for appellants.

*Stratton*, *Lewis & Gilman*, and *J. B. Yakey*, for respondent.

The opinion of the court was delivered by

,SCOTT, J.—The respondent moves to strike the state-
ment and to dismiss the appeal, because no bond upon the
appeal was given, and for other reasons stated.   The
county and said Williams both gave a notice of appeal,
but he failed to give a bond.   None is required upon the
part of the county.   The notices of appeal were sufficient
to give this court jurisdiction of the cause for the county,
and its rights could not be affected by the failure of the re-
spondent Williams to perfect the appeal upon his part.
In all other respects the case was regularly appealed, and
the motions are denied.

In the year 1870, one Michael Kelley died in the
county of Kitsap, Territory (now state) of Washington,
and the defendant, Theodore Williams, administered his es-
tate.   Williams, after holding the estate for about eighteen
months, and, searching for, but finding no heirs, rendered
a final account of his trust, which was approved by the pro-
bate court of said county, and in 1871 he turned over to
said county the sum of $1,850, the proceeds of said estate
remaining after the payment of its debts.   The plaintiff
seeks to recover this money from the defendants upon the
ground of his being an heir to said Michael Kelley, deceased.
The county of Kitsap admits the possession of the money,
but by its pleading puts upon the plaintiff the burden of
establishing his right to the same; that is, to show himself
to be the child of Michael Kelley, deceased, and his lawful
heir.   Plaintiff contends that his mother, an Indian woman,
who was at some time known as Julia, or Julia Descartes,
was the wife of said Michael Kelley, and that said Michael
Kelley was his father; and that he was born at Port Or-
chard, in said county, about the month of March, 1867,
while the relation of husband and wife existed between
said Kelley and said Indian woman, claiming that his mother

and said Kelley were married on or about the 15th day of January, 1865, in said county, by duly consenting to be husband and wife, and that, after so consenting, they did cohabit and live together as such agreed husband and wife. There is no claim that any marriage ceremony was ever performed for the parties.    It is admitted that said Indian woman died at Port Madison, in said county, on or about May 1, 1887.    There is no claim that plaintiff was the illegitimate child of said Kelley, and that Kelley ever acknowledged himself in writing, signed in the presence of a competent witness, to be the father of the plaintiff.    A trial by jury was had, which resulted in a verdict and judgment for the plaintiff.

*In re McLaughlin's Estate*, 4 Wash. 570 (30 Pac. Rep. 651), this court, in considering the legislative enactments there involved, held that marriages as at the common law were not valid here; and the statutes in force when it is claimed the marriage here in question took place are sufficiently similar to the statutes considered in the *McLaughlin* case to bring this action within the holding there.    See Laws 1854, p. 404; Laws 1855, p. 33; Laws 1859, p. 24.    No proof was made as to what ceremonies were resorted to by the tribe of Indians to which this woman belonged in marriages among themselves, and there is no question here of recognizing or repudiating a marriage which, according to their customs, they recognized as valid. A good deal of testimony was introduced as to the way Indian women were procured by white men, in which there was no substantial conflict.    In such instances a payment of money was usually made to her relatives, varying in prices from a very few to several hundred dollars in some cases.    If she left him without cause, the Indians would return the money.    If he sent her away, or left her, they would not return it, unless he could show a satisfactory reason therefor.    As to what were considered sufficient

reasons we are not informed by the testimony; but it is clearly apparent that white men had no difficulty in obtaining Indian women to live with them by paying money to their relatives, and that the practice was a somewhat common one in the earlier history of the territory.   The relation thus instituted could be abandoned by either at pleasure, and in most cases it was sooner or later abrogated by the act of the parties.   In some instances, however, the parties continued to live together, and were subsequently formally married to each other.   The testimony in this instance shows that said Michael Kelley obtained this woman by paying two or three dollars in silver to her sisters; that they lived together a short time, and that she left him, she being at the time pregnant, and that the plaintiff was the issue.   All of the testimony in relation to these parties agreeing to live together, and their cohabitation, was objected to by the defendants, and it should have been ruled out under the circumstances.   Such arrangements could hardly amount to marriages under any law.

Reversed and remanded, with instructions to dismiss the action.

DUNBAR, C. J., and HOYT, STILES and ANDERS, JJ., concur.