[No. 4300.　Decided March 28, 1903.]

CORA E. SUMMERVILLE, *Respondent*, v. WILLIAM J. SUMMERVILLE, *Appellant*.

DIVORCE — RESIDENCE OF PLAINTIFF.

Residence in the state and county a year prior to an action for a divorce is sufficiently established by evidence showing that plaintiff took up her residence in Seattle some twenty months prior to the commencement of action, and that, while she had been out of the state a portion of the time, it had merely been for employment, her baby having been left within the state and it having been her constant intention to make Seattle her home.

SAME — PROOF OF MARRIAGE — SUFFICIENCY OF EVIDENCE.

Upon an issue in a divorce case as to the marriage of the parties, the fact of marriage is sufficiently established, as against the husband's claim that merely a contract therefor was entered into which was void under the law of the place, where the undisputed evidence shows that they cohabited as man and wife, and held themselves out to the public as sustaining that relation, during which time they had offspring as the result of their union; and, upon the disputed question of whether a marriage ceremony preceded their cohabitation, the wife was sustained by corroborating circumstances in favor of such contention, while the husband, who contradicted her, was impeached in several particulars while giving testimony.

Appeal from Superior Court, King County.—HON. ARTHUR E. GRIFFIN, Judge. Affirmed.

*P. V. Davis* and *William A. Gilmore,* for appellant.

*Byers & Byers,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—Respondent brought this action against appellant for divorce and alimony. The complaint al-leges that the two were married at Lake Linderman, in British Columbia, on June 18, 1898; that a child, two years of age at the time the complaint was drawn, was born as the issue of the marriage; that on or about August, 1899, appellant sent respondent out from Dawson City, where they were then residing, together with the child, then three months old, and stated to respondent that he would send her money, and that he would also come out later in the autumn; that appellant did not come out, and has never sent respondent any funds of any kind since said date; that he has wholly deserted and abandoned her, and has contributed nothing for her support or that of her child, since August, 1899. The answer denies the marriage, and denies that respondent was a resident of King county at the time the action was commenced, or that she had resided in this state for one year immediately preceding the commencement of the action. The paternity of the child is admitted, and it is affirmatively alleged that by mutual agreement the two cohabited together during the summer of 1898 at Lake Linderman, aforesaid, and that they thereafter went to Dawson City, and there lived together until about the month of August, 1899, when they mutually consented to separate forever; that appellant then gave respondent one-half of all the property and money he then owned; and that it was further agreed that neither should have any claim against the other for any prop-erty thereafter accumulated by either, including any claim for alimony against appellant. These allegations are denied by the reply, and upon these issues the cause was tried by the court without a jury, resulting in a decree of divorce in favor of respondent, awarding her

the custody of the child and $20 per month alimony, to be paid monthly by appellant. From said decree this appeal was taken.

It is insisted, first, that respondent failed to establish that she had been a resident for the required time before bringing the action. The suit was commenced in May, 1901. The evidence showed that respondent came out from Dawson in the summer of 1899. Much of the time following until this suit was begun she spent in Seattle. During a portion of the time she was in Victoria, where she says she went for employment. She testified, however, that her child meanwhile remained in Seattle, and that it was her constant intention to make Seattle her home. We think the evidence was sufficient to establish residence for a sufficient length of time to give the court jurisdiction.

Appellant's main contention is that respondent failed to establish the marriage. She was very young at the time of the alleged marriage, being not quite sixteen years of age. She testified that in the spring of 1898 she and her mother were together at Lake Linderman, where they met appellant. Appellant's own testimony shows that he was then about thirty-five years of age. Respondent says that while at Lake Linderman they agreed to be married, and that afterwards appellant took her before some one whom she believed to be a clergyman, and who performed the marriage ceremony between them. She says she really was excited at the time, and cannot well remember all that occurred. She saw no marriage license or marriage certificate. She testifies that from that time she and appellant lived together as husband and wife, her mother also living with them. Appellant denies her statements about the marriage ceremony, but admits that they began living and cohabiting together at Lake Linderman, and that the

mother lived with them.    They afterwards all went to
Dawson together, where the two continued to sustain the
relation already established, and meantime the child was
born.    Another witness, who was at Dawson at the time,
testified that appellant introduced respondent there as
his wife, and that she was held out by him as being
such.    Still another witness, who was at appellant's
house in Dawson, says that while there appellant asked
respondent to bring the baby down from upstairs, and
he then told the witness that the child was his, as did also
the mother of respondent.    The witness does not say
that appellant told him in so many words that the moth-
er of the child was his wife, but that in the manner
above he held her out as being such.    There was no record
evidence of the marriage introduced.    Respondent's tes-
timony is supported only by the circumstances detailed
above, and by further circumstances occurring at the
trial, having at least a tendency to impeach the testi-
mony of appellant.    A letter addressed to respondent
after she left Dawson was shown him, in which she was
addressed as the wife of the writer.    The writer also
designates himself at the close of the letter as "Hubby,"
uses many endearing terms towards respondent, and ex-
presses much solicitude about the health and welfare of
the child.    Appellant denied that he wrote the letter.
He was asked, while on the witness stand, to write cer-
tain words from dictation, which he did.    The words
were extracts from the letter.    The newly written words
bore much the same general appearance as those ₁in the
letter, notably in the matter of a misspelled word; the
word "both" being in each instance spelled "boath."
Another letter received by respondent closes with what
purports to be the signature of appellant.    That signa-
ture, by comparison with another in the record, admit-
tedly genuine, appears to be that of appellant.    The

writing in the body of the last-named letter appears to have been written by the same person who wrote the first-mentioned one. All the circumstances stated above, together with the further fact that appellant is flatly disputed by disinterested witnesses when he denies that he introduced and held out respondent as his wife at Dawson, must have led the trial court to the belief that he was impeached. Appellant was before the trial court, who observed his manner of testifying, and from anything which appears in the record we shall not say that the conclusion was incorrect. If appellant's testimony as to the fact of a marriage is not given weight, then the only direct evidence as to the fact is that of respondent.

Appellant takes the position that no more than a contract marriage was shown, and seems to assume that such was all that respondent meant to prove. He asserts that the alleged marriage occurred in British Columbia; that under the laws of England a contract marriage is void; that such was the law in 1858, when the Province of British Columbia adopted the English civil law as it then stood; and that such a marriage has, therefore, never since been valid in British Columbia. But, be that as it may, appellant is in error when he assumes that respondent undertook to prove only a common-law marriage. She introduced evidence of the performance of a regular, lawful marriage ceremony, and further evidence of subsequent cohabitation in substantiation of the fact that such a marriage had taken place. The intendment of the law is to presume from such testimony that a valid marriage existed, and, when such facts appear in evidence, the burden of proof is cast upon the party denying it to clearly show the contrary.

"Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether

regular or irregular, and whatever the form of the proofs, the law raises a strong presumption of its legality,—not only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain, against the constant pressure of this presumption, the truth of law and fact that it is illegal and void. . . . It being for the highest good of the parties, of the children, and of the community, that all intercourse between the sexes in form matrimonial should be such in fact, the law, when administered by enlightened judges, seizes upon all probabilities, and presses into its service all things else which can help it, in each particular case, to sustain the marriage, and repel the conclusion of unlawful commerce." 1 Bishop, Marriage, Divorce & Separation, § 956.

Again, the same author, in § 959 of the same volume, says:

"If a ceremony of marriage appears in evidence, it is presumed to have been rightly performed, and to have been preceded by all the needful preliminaries."

A marriage ceremony appeared in evidence in the case at bar. It is true appellant denied that there was any ceremony, but the court must have disbelieved him, and with that disposition of the testimony the fact of the ceremony stands established by the evidence of respondent. It follows from the rule stated by the learned author above that "all the needful preliminaries" are presumed to have preceded the ceremony, in the absence of convincing proof to the contrary. A valid marriage may be presumed to exist from general reputation among the acquaintances of the parties that such is the fact, when that reputation is accompanied by their cohabitation, and arises from their holding themselves out to the world as occupying that relation to which the law refers when marriage is mentioned. *Wallace's Case,* 49 N. J. Eq. 530 (25 Atl. 260) ; *White v. White,* 82 Cal.

427 (23 Pac. 276, 7 L. R. A. 799); *Murray v. Murray,*
6 Ore. 26; *Arthur v. Broadnax,* 3 Ala. 557 (37 Am.
Dec. 707); Underhill, Evidence, p. 158, § 114. The
exception to the rule that marriage may be presumed
from evidence of cohabitation and repute is where a
public or criminal offense is involved. The exception
is based upon the ground that the presumption of mar-
riage without proof of actual marriage cannot overcome
the stronger presumption of innocence. *White v. White,*
*supra; State v. Hodgskins,* 19 Me. 155 (36 Am. Dec.
742); Stewart, Marriage & Divorce, § 126. The excep-
tion to the rule does not apply in this case, since it is
a civil action. Upon the contrary, however, since the
ordinary relations attending marriage existed between
the parties, and since appellant admits that he is the
father of the child, the law indulges every reasonable
intendment, probability, and presumption in aid of the
testimony that a marriage ceremony was performed, to
the end that the innocence of the parties and the legiti-
macy of their child may be established.

The amount of money allowed by the court was rea-
sonable under the evidence. We find no reversible error,
and the judgment is affirmed.

FULLERTON, C. J., and MOUNT, DUNBAR and ANDERS,
JJ., concur.