[No. 6432.    Decided April 29, 1907.]

CHARLES L. McDONALD et al., Appellants, v. EDWARD A. WHITE et al., Respondents.[1]

MARRIAGE—EVIDENCE—SUFFICIENCY.    A marriage between Indians is sufficiently proven where it appears that a marriage ceremony was performed by a duly licensed minister, and the parties lived together as husband and wife for many years, and upon the wife's death the husband erected a monument over her grave describing her as his wife.

INDIANS — CONVEYANCES — RESTRICTION  AGAINST  ALIENATION — ESTOPPEL TO ASSERT INVALIDITY.    Where a lease for 99 years was made by Indian patentees while there existed a restriction against their alienation of the premises for five years from the date of a patent, the lessors and their heirs and assigns are estopped from questioning the validity of the lease, where they waited before doing so for overy twenty years, during which time the lessees and their assigns occupied the premises, paid rent, and made valuable improvements relying on the validity of the lease (RUDKIN, J., dissenting).

APPEAL—RIGHT TO APPEAL—CROSS-APPEALS.    A cross-appeal may be taken from any part of a final judgment which is adverse to the claims of the respondent in whose favor the judgment was entered.

Cross-appeals from a judgment of the superior court for Asotin county, Miller, J., entered November 18, 1905, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*Ben F. Tweedy, Dwight E. Hodge,* and *Charles L. Mc-Donald,* for appellants.

*Geo. W. Tannahill, Gose & Rummens,* and *Eugene O'Neill,* for respondents.

ROOT, J.—This litigation involves the title to a tract of land originally obtained from the government by one Timothy, a Nez Perce Indian.    In 1878 Timothy made application at the United States land office at Walla Walla, to file

[1]Reported in 89 Pac. 891.

on said land as a homestead.  He made final proof and obtained a receiver's receipt, and subsequently, on April 15, 1884, a patent from the United States government.  This patent recited that the land should not be sold or incumbered for a period of twenty years.  It seems to be conceded by both parties that this nonalienation clause was erroneous, it being in accordance with the statute of 1881 relating to the Winnebago Indians.

. Appellants contend that the patent was issued in accordance with the act of March 3, 1875, and should have had a clause forbidding alienation or incumbrance for the period of five years.  Respondents urge that there should have been no nonalienation clause whatever, inasmuch as Timothy had severed his tribal relations and was a citizen of the United States. It appears that Timothy declared his intention May 14, 1877, to become a citizen of the United States.  But there is no evidence that he was ever admitted as a citizen by any court or by any authority, other than by operation of law flowing from the fact that he severed his tribal relations and thereby became entitled to the privileges accorded by the United States statutes to such Indians.  In making his final proof he testified that he was a citizen and had severed his tribal relations. It seems to have been conceded that, at the time of filing upon this land, he had severed such tribal relations and adopted the habits of civilized life, and that he never thereafter resumed tribal relations.  His wife was an Indian woman named Tima. They had four children: He-yoom-ye-it-pilp, or He-yune-yele-ilip-ilip, or Edward; second, Amos; third, Estep-ee-nim-tse-lot, or Young Timothy; fourth, Jane Timoochin.  The last-named married an Indian by the name of McBean.  They had a child named William McBean, who married a woman named Annie Levi.  The issue of this marriage was Cora, who married a man by the name of Jackson.  Her interest in the property, herein involved, was deeded to appellant Charles L. McDonald.  Young Timothy married a woman named Maggie.  They had a child named Amelia, who mar-

ried a man by the name of Bredell. The issue of this marriage was a son called Abraham. Amos, during the lifetime of Timothy and Tima, died unmarried and without issue. Respondents claim that Edward was married twice; that his first wife was Delia, and that to them was born a daughter named Pah-paht-in, who married a man by the name of Wat-tse-tse-kow-en. The issue of this marriage was a girl named Poh-poht-in or Pitts-teen, sometimes called Lilly Cash-cash, who married an Indian named Woh-yoh-tse-kown or Par-kar-la-pykt, sometimes known as Edward Cash-cash; that Edward's second wife was a woman called "New Years;" that the issue of said wife was Nancy Tse-wit-too-e, who married George Waters. To them were born two children, Ellen and Nora, the former marrying one Winniber, and the latter Thomas Hart. Timothy, the original grantee, was a chief of that part of the Nez Perce tribe living on Alpowai Creek. He was also a preacher. He is said to have been instrumental in saving the lives of General Steptoe and his men, and to have participated in the treaty made by Governor Stevens on the part of the government with the Nez Perce Indians. He died in 1890 or 1891, being then some eighty-nine years old. Tima died in 1889, being about ninety-three years of age. Timothy filed upon the land in controversy May 4, 1878, and made final proof in September, 1883. Patent issued April 15, 1884.

On the 19th of June, 1884, Timothy and Tima executed a lease of the land to John M. Silcott, for a period of ninety-nine years from that date. The lease was not acknowledged. Silcott lived with, and, it is claimed by respondent, married Jane Timoochin, after she had separated from McBean, whom she had married as hereinbefore mentioned. On April 1, 1890, Silcott sold and assigned an undivided one-half interest in such lease to one L. A. Porter, and on March 21, 1892, assigned the other half to one Richard Ireland. On March 20, 1902, Silcott deeded the land in controversy to Richard Ireland by quitclaim deed. On October 17, 1903, Ireland and

wife conveyed the land to respondents, and on the same day assigned to respondents the lease above referred to. On March 19, 1904, said Porter sold and assigned his one-half interest in such lease to W. J. Houser and Ross R. Brattain. On May 6, 1904, Houser and Brattain and wives entered into a contract for the sale of their interest in said lease to respondents. Porter regularly conveyed the fee interest obtained by him to respondents.

It appears to be conceded that, at the time of the trial, respondents were the owners of the lease, and had a contract of purchase for half of the fee of the land subject to the lease; that said contract includes the inheritances of Ellen Winniber, Nora Hart, Pitts-teen or Lilly Cash-cash, and John M. Silcott. Both appellants and respondents assert ownership of the Cora Jackson inheritance. Respondents contend that Ellen Winniber, Nora Hart and Pitts-teen inherited one-third of the fee of this land; that John M. Silcott inherited one-sixth as the husband of Jane Timothy. The appellants dispute all of this. Respondents have a contract of purchase from the grantees of the heirs of Edward, and a deed from said Silcott who, they claim, was the surviving husband of Jane. The interest inherited by Jane passed either equally to said Silcott and Cora Jackson, or to the latter alone, depending upon whether or not Silcott was lawfully Jane's husband. Appellants own the inheritance coming through Young Timothy.

The appellants contend that Silcott was not married to Jane. The evidence shows that there was an actual marriage ceremony performed for these parties in either 1880 or 1881, by Rev. James Hines, a duly licensed minister; but appellants argue that he was not an ordained minister, and that no license had been issued prior to the ceremony. The evidence does not affirmatively show that such a license was issued, nor does it affirmatively show that it was not issued. It is evident that the parties to the marriage were endeavoring to comply with

the law and to fittingly recognize what was proper and right in the matter of solemnizing the marriage. They lived together many years after this ceremony, and held themselves out to the world, and were treated by the community, as being husband and wife, and after her death a monument was erected at her grave with an inscription thereon, wherein she was described as the wife of Silcott, said monument being placed there by him. In view of all the surroundings, we do not think that the trial court erred in treating this as a valid marriage. It is also contended that adequate proof was not made of the marriage of Edward. We think it sufficiently appears.

It is strenuously urged by appellants that the ninety-nine-year lease was absolutely void. This lease was made during the five-year period within which, under the law of 1875, an Indian patentee was without authority to alienate or incumber the land. They contend that it is clear that this law controlled; that Timothy was not a citizen enlisted to an absolute title from the government on making final proof, but that he had his rights under the statutes applying to Indians who had forsaken their tribal relations, and that his patent must be construed as if the five-year limitation was therein contained.

The respondents claim that Timothy's title was absolute, and that he and Tima had the right to sell, convey, or incumber the property in any way they chose. They also maintain that, even if the law of 1875 applied and the lease were consequently void, by reason of laches and an equitable estoppel these appellants cannot question respondents' rights under this lease. There is evidence to show that, after this lease was made, Silcott took possession of the premises, and that he and his assignees have been in possession thereof ever since that time; that they have made many and valuable improvements upon the land; that Timothy and Tima during their lifetime never questioned said lease, and none of their heirs ever did so, and no one else, until the commencement of

this action.   It is also claimed by respondents that Silcott took care of Timothy and Tima during their lifetime after the commencement of said lease, and paid the expenses of their burial, and paid to and expended for them much more than the total amount of the rental of said land for the ninety-nine years.   Many of these contentions as to matters of fact are disputed by the appellants, and there is considerable conflict in the evidence touching most of them.   We think, however, that it clearly appears that Silcott and those claiming under him occupied these premises from the time of said lease to the commencement of this action without interruption, and that they expended several thousand dollars in improving the same, and that all these things were done with the knowledge of Timothy, Tima, and their heirs through whom these appellants claim; that said parties lived near by and were in a position where they knew of the occupancy of the premises and of the improvements that were going on from year to year.

If the contention of appellants is correct, to the effect that the title of Timothy was taken from the government under the law of 1875, which had the five-year nonalienation provision therein, the lease made during that period would doubtless be void.   However, Silcott having taken possession of the premises and having remained until the five-year period had expired, and he and his assignees thereafter continuing to occupy said premises under said lease and to continually improve and spend large sums of money upon said premises, we think, as a matter of equity, that these appellants at this late day are not in a position to question the right of the respondents' possession thereof.   The original lessors being Indians and their heirs being mostly Indians, we think much latitude should be accorded them, and that they should be held to have had a liberal allowance of time after the expiration of the five years wherein to take appropriate proceedings to set aside said lease and take possession of the premises if said lease were invalid.   But having waited over twenty years

while the lessees and their assigns were occupying and improving the premises and relying upon the validity of said lease, we do not think, as a matter of equity and good conscience, they should now be permitted, when the land has become much more valuable, to step in and oust the respondents.

The trial court found that Timothy and Tima were the owners in fee simple absolute of the land on the 19th day of June, 1884, and were legally competent to execute the lease referred to, and moreover found that, prior to June 15, 1890, the rental had been fully paid for the entire period; that subject to and after the expiration of said lease, the respondents were the owners of a contract of purchase for the undivided one-sixth interest of Pitts-teen, of the undivided one-twelfth interest of Ellen Winniber, to the undivided one-twelfth interest of Nora Hart, and the undivided one-sixth interest of John M. Silcott, amounting in all to an undivided one-half interest. It further found that, subject to said lease and after the expiration thereof, the appellants would be the owners of an undivided one-half of the fee of said land, consisting of the following inheritances: The undivided one-sixth interest owned by Cora Jackson, granddaughter of John Silcott, and the undivided one-third interest descending to and from Young Timothy.

The defendants herein have filed a cross-appeal wherein they seek to review that portion of the trial court's judgment and decree wherein the court found that plaintiffs were the owners, subject to the lease, of the Cora Jackson inheritance in said land. Plaintiffs move to dismiss this cross-appeal on the ground that there is no authority for an appeal of this character in our statute, in that it appears to be an appeal from a part of a judgment and not from the whole thereof, and is consequently not an appeal from the final judgment in an action or proceeding as provided by the statute. We do not think this motion well taken. A party may appeal from the whole or any part of a judgment adverse to him if he con-

siders the same erroneous, assuming that it is not so connected with the judgment as a whole as to make an appeal from the judgment as an entirety necessary to a proper determination of the issue presented.

The contention of the cross-appellant is that the plaintiff Charles L. McDonald was attorney for the administrator in the settlement of the Timothy estate, and that as such he became possessed of certain knowledge concerning the titles and nature of this property, and stood in a fiduciary relationship toward all of the heirs such as should have prevented him from buying in the interests of any of the heirs. It is urged that his conduct was inconsistent with his duty as attorney for such administrator. There may be, and doubtless are, occasions where it would be against public policy for an administrator to use to his personal advantage information received in the discharge of his duty as such administrator, and the same rule would probably apply to the attorney of the administrator. But in view of all the evidence and facts in this case, we do not believe the trial court was in error in holding as it did with reference to the interest acquired by plaintiffs from said Cora Jackson.

Each party to this action accuses the other of overreaching the Indians with whom they dealt. Plaintiffs claim that the lease for ninety-nine years at $10 a year was not only invalid but iniquitous and wrong and an imposition upon the poor Indians. Respondents retort that the buying in by plaintiffs of the interest of the various Indian heirs for the small sum of about $600 was devoid of that honorable treatment to which the Indians were entitled. None of the Indians are parties to this litigation. They all seem to have parted with their interests; whether all legally it is not before the court to determine.

The record in this case is voluminous, and to discuss and analyze the evidence bearing upon the various disputed questions of fact would require more time and space than we think necessary to a decision of the case. Without expressing an

opinion as to the various findings and conclusions made and entered by the trial court, we think its judgment and decree was correct, and it is therefore affirmed.

HADLEY, C. J., FULLERTON, CROW, MOUNT, and DUNBAR, JJ., concur.

RUDKIN, J. (dissenting) — The ninety-nine year Indian lease was not executed in conformity with the laws of Washington Territory, was in contravention of the laws of the United States, and was founded upon little more than a nominal consideration. I do not think that there are any equities in the case which would warrant this court in departing from the strict rules of law, and therefore I dissent from the judgment.