[No. 7169.   Decided July 16, 1908.]

*In the Matter of the Estate of* MARY SLOAN, *Deceased.*
SAMUEL SLOAN, *Appellant,* v. D. W. WEST, *as Administrator,*
*et al., Respondents.*[1]

MARRIAGE—EVIDENCE—SUFFICIENCY — PRESUMPTIONS.   The uncontradicted testimony of both parties that they were married by a minister authorized by law to solemnize marriage and that they lived together as husband and wife for some years, is sufficient to establish the validity of a marriage, even although there was to be overcome the presumption arising from a second marriage by the husband without having obtained a divorce; and it is not necessary to show the publication of banns, license, or qualifications of the minister, all of which will be presumed until the contrary appears.

SAME—ESTOPPEL.   One who has unlawfully contracted a second marriage while his first wife is living is not estopped to deny his second marriage, as against the administrators of the second woman's estate and her heirs, upon final distribution of the estate, although he joined in the petition for administration, describing the deceased as his wife.

HUSBAND AND WIFE—COMMUNITY PROPERTY—LAWFUL MARRIAGE. There can be no community property without lawful marriage; hence where a woman contracted marriage with a man knowing that he had a wife living, and they agreed to keep their property separate in view of such relation, her heirs by a former husband are not entitled to inherit from her, as community property, any property acquired by the husband.

WITNESSES—TRANSACTION WITH DECEASED.   The son of one of the parties is not incompetent to testify as to conversations had with the deceased, since a prospective heir is not a party in interest.

Appeal from a judgment of the superior court for King county, Frater, J., entered September 28, 1907, upon granting a nonsuit at the close of plaintiff's case, in an action to quiet title.   Reversed.

*Frank A. Steele, Walter B. Beals,* and *Hastings & Steadman,* for appellant.

*W. E. Humphrey* and *Edward Von Tobel,* for respondents.

[1]Reported in 96 Pac. 684.

RUDKIN, J.—Samuel Sloan and Alice Babcock, sometimes known as Elsie Babkirk, intermarried in Albert county, New Brunswick, about the year 1852 and remained husband and wife until the marriage was dissolved by decree of the superior court of Kitsap county, on the 14th day of April, 1902, at the suit of the husband. The parties to this marriage lived together in New Brunswick as husband and wife for some years after the consummation of the marriage, and then separated. In the year 1868 the husband came to Washington Territory, and has resided in the territory and state ever since. In the year 1873 he returned to New Brunswick, and there married one Mary Steves early in the year 1874, while his former wife was still living and undivorced. Immediately after this marriage, he returned to Washington Territory with Mary Sloan or Mary Steves, and the parties continued to live together here as husband and wife from that time until the death of the latter, on the 6th day of February, 1899. On the 19th day of April, 1902, D. W. West, a son-in-law of Mary Steves, petitioned the superior court of King county for letters of administration on her estate, as the deceased wife of Samuel Sloan, and Samuel Sloan joined in the petition. The prayer of the petition was granted and the administration proceeded until the 31st day of January, 1905, at which time a final account of the administration was rendered and a petition for distribution filed. The petition for distribution prayed that one-half the residue of the estate be distributed to Samuel Sloan, as surviving husband, and the other half to certain children of Mary Steves by a former husband, and to the representatives of certain deceased children.

At this juncture, Samuel Sloan filed his petition in the estate matter, setting forth his marriage with Alice Babcock long prior to his marriage with Mary Steves; that his former marriage was not dissolved until long after the death of Mary Steves; that Mary Steves knew at all times that the

petitioner had a lawful wife living; that it was agreed between the petitioner and Mary Steves that a fair proportion of all property earned or acquired by them should be given to her as her separate estate; that this agreement was carried out, and that Mary Steves received for her own use and benefit one-half of all property acquired by them in this state; that the petitioner was absent in Alaska when Mary Steves died, and that on his return to this state her son-in-law represented to him that it would be necessary to take out letters of administration on her estate in order to perfect title to the remaining property in the petitioner; that certain false and fraudulent representations were made; that the property sought to be distributed is the sole and separate property of the petitioner and should be distributed to him, etc. The allegations of this petition were put in issue by answers filed by the administrator and the heirs at law of Mary Steves, deceased, and a trial was had. At the close of the petitioner's case the court granted a motion for nonsuit, and from the judgment of nonsuit this appeal is prosecuted.

The existence of the marriage between the appellant and Alice Babcock is controverted, but that marriage is established by clear and cogent proof. The fact that the parties were married about the date specified, in the presence of witnesses, by a Baptist minister authorized by the laws of the Province of New Brunswick to solemnize marriage, and that they thereafter lived together as husband and wife for some years, was testified to by both of the contracting parties and by several disinterested witnesses, and was in no wise contradicted or controverted.

"The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy. The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the

presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence." *Hynes v. McDermott,* 91 N. Y. 451.

We are not unmindful of the fact that the presumption which ordinarily attaches to the first marriage is now transferred to the second, and that stronger proof of the validity of the first marriage is required than if the second did not exist. The presumption which attaches to the second marriage, however, only overcomes a presumption of marriage arising from reputation and cohabitation, and is not sufficiently strong to overcome such proofs of marriage as are found in this record. The proof here is ample to establish the validity of the first marriage, even in a criminal prosecution for bigamy, much less in a civil action where property rights alone are involved. *State v. Kean,* 10 N. H. 347, 34 Am. Dec. 162; *Fleming v. People,* 27 N. Y. 329; *People v. Calder,* 30 Mich. 85; *Hutchins v. Kimmell,* 31 Mich. 126, 18 Am. Rep. 164; *State v. Hodgskins,* 19 Me. 155, 36 Am. Dec. 742; *Damon's Case,* 6 Me. 148.

The respondents contend that there is no proof that banns were published, that a license was obtained, that the officiating clergyman was a British subject, or that the marriage was not dissolved. The authority of the officer or clergyman performing the marriage ceremony, and all the prerequisites of a valid marriage will be presumed until the contrary is made to appear. *Megginson v. Megginson,* 21 Ore. 387, 28 Pac. 388, 14 L. R. A. 540, and note. Both of the contracting parties testified that the marriage between them was not dissolved until long after the death of Mary Steves, and this proof overcomes any presumption that the court might otherwise indulge.

It is further contended that the appellant is estopped to deny the validity of his marriage to Mary Steves, or the fact that the property in controversy is the community property of himself and Mary Steves. Doubtless parties are some-

times estopped to deny their marriage as to third persons who have been misled to their prejudice, but, as between husband and wife and parent and child, there is no such status known to the law of domestic relations as marriage by estoppel. Nor is the appellant estopped by reason of anything contained in the administration proceedings. *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107; *Hatch v. Ferguson*, 57 Fed. 966. If there was no lawful marriage between the appellant and Mary Steves, as a matter of course there is and can be no community property. *Hatch v. Ferguson, supra; Kelley v. Kitsap County*, 5 Wash. 521, 32 Pac. 554; *Stans v. Baitey*, 9 Wash. 115, 37 Pac. 316; *Routh v. Routh*, 57 Tex. 589; *Chapman v. Chapman*, 11 Tex. Civ. App. 392, 32 S. W. 564; 21 Cyc. 1636; 6 Am. & Eng. Ency. Law (2d ed.), 297.

We therefore hold that the proofs in the record amply show that the appellant and Mary Steves were never lawfully married, and that the property involved in this action is not community property. If the respondents have any interest in the property as children or grandchildren of Mary Steves, deceased, the burden is upon them to establish that fact, as it does not arise out of any marriage relation. We cannot anticipate the questions that may arise in the further progress of the trial, and all such questions must be left open for future consideration. We do hold, however, that if it should appear that there was no lawful marriage between the appellant and the deceased, that the deceased was at all times fully aware of their meretricious relations, and that in view of such relations their property was kept separate and apart; the respondents have no right or interest in the property now in controversy. In view of the retrial that must follow a reversal, we will add, further, that the court was in error in excluding the testimony of Samuel H. Sloan, a son of the appellant, on account of interest in the subject-matter of the action. The only possible interest the witness had or could

have, under the facts disclosed by the record, was that of a prospective heir. But the rule is well established that the living have no heirs, and that the interest of the ancestor does not disqualify the heir apparent.

"The *true test of the interest* of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him, in some other action. It must be a present certain, and vested interest, and not an interest uncertain, remote, or contingent. Thus the heir apparent to an estate is a competent witness in support of the claim of his ancestor; though one who has a vested interest in the remainder, is not competent. And if the interest is of a *doubtful nature*, the objection goes to the credit of the witness, and not to his competency. For, being always presumed to be competent, the burden of proof is on objecting party, to sustain exception to the competency; and if he fails satisfactorily to establish it, the witness is to be sworn." 1 Greenleaf, Evidence (14th ed.), § 390.

For the error in granting the nonsuit, the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Dunbar, Crow, and Mount, JJ., concur.

Hadley, C. J., and Fullerton, J., took no part.