[Nos. 8250, 8251. Department One. December 16, 1909.]

SALLIE WEATHERALL, *Appellant*, v. ROBERT WEATHERALL *et al., Respondents.*[1]

APPEAL—DISMISSAL—RECORD—STATEMENT OF FACTS—FILING. It is not ground for the dismissal of an appeal that a proposed statement of facts, filed without service, was withdrawn, refiled, and served under an order of court, within the time for proposing the same.

SAME—STATEMENT OF FACTS—CASES TRIED AS CONSOLIDATED. Where two cases are tried together and one judgment entered, thus treating the cases as actually consolidated, but one statement of facts is necessary on appeal.

MARRIAGE—COHABITATION—PRESUMPTION. While a common law marriage is not valid in this state, cohabitation and reputation raises a rebuttable presumption of a valid ceremonial marriage.

[1]Reported in 105 Pac. 822.

MARRIAGE—COHABITATION AND REPUTATION—EVIDENCE—ADMISSI-
BILITY.  Evidence of cohabitation between a white man and an
Indian woman, and of reputation and declarations of the husband
that they were married, and of the manner in which they lived
together and the opinion of friends and neighbors, is admissible to
raise the presumption of a ceremonial marriage, and to supplement
evidence of a marriage ceremony performed by an Indian chief as-
suming to act as a minister.

MARRIAGE—CEREMONY—EVIDENCE — SUFFICIENCY — AUTHORITY  OF .
MINISTER—STATUTES AS TO VALIDITY.  A marriage ceremony wherein
a white man and an Indian woman agreed to take each other as
husband and wife, performed by an Indian chief who was a
Christian of the Presbyterian faith, and who assumed to be a min-
ister, and to have authority to unite people in marriage, is within
Bal. Code, §§ 4470, 4471, providing that no particular form is neces-
sary other than the assent to take each other as husband and wife,
and that the validity thereof shall not be affected on account of
any want of power or authority of such person, if the marriage is
consummated with a belief on the part of either of the persons
that they have been lawfully married.

WITNESSES—TRANSACTIONS WITH DECEASED—WIFE'S TESTIMONY
AS TO MARRIAGE.  The surviving wife, claiming an interest in lands
of her deceased husband, is, under Bal. Code, § 3991, incompetent
to testify as to the marriage or to any other transaction with the
deceased.

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered April 29, 1909, dismissing
on the merits actions to establish a marriage and to contest
a will, and to establish a resulting trust in real property.
Reversed.

*J. W. Robinson* and *R. H. Fry*, for appellant.

*Troy & Sturdevant* and *A. J. Falknor*, for respondents.

Gose, J.—The appellant commenced a proceeding in the
superior court of Thurston county in probate, for the pur-
pose of establishing her marriage with H. R. Weatherall,
deceased, and contesting his alleged will.  Later she filed in
the same court a bill in equity against the respondents, to
establish a resulting trust in certain real estate.  The two
cases were tried, and one judgment was entered dismissing
both cases.  An appeal was taken from this judgment.

A motion to dismiss the appeal has been interposed, based upon two grounds, (1) because the statement of facts was filed May 2, 1909, without service, and withdrawn, refiled, and served on June 19, 1909, under an order of the court; (2) because but one statement of facts was served and filed in the two cases. The judgment was entered April 26, 1909. In support of the first ground, respondents cite *State ex rel. Royal v. Linn*, 35 Wash. 116, 76 Pac. 513. The case is not in point. It holds, construing Bal. Code, § 5058, that, where a proposed statement of facts has been filed and served and no amendments proposed within ten days, the proposed statement "shall be deemed agreed to," and shall be certified by the judge, and that he cannot thereafter permit it to be withdrawn, amended, refiled, and resettled. No good would have resulted to the respondents from a separate statement of facts in each case. The statements would necessarily have been duplicates. While the cases were not technically consolidated, they were tried together, and one judgment was entered, thus treating the cases as having been actually consolidated. The objections are technical and raise no question going to jurisdiction. The motion will be denied.

The petition in probate alleges that the petitioner and H. R. Weatherall, deceased, were married in 1879, in Thurston county, this state, and that they lived together as husband and wife until the decease of the latter. This is denied by the respondents. The appellant is an Indian woman, and the deceased was a white man. The appellant contends that there was a valid ceremonial marriage about the year 1879, and that the parties lived together thereafter, in the manner usual between husband and wife, until the death of the husband. The respondents insisted throughout the trial, and now insist, that the relation between the appellant and the deceased was not at any time one of a matrimonial cohabitation, but an illicit and meretricious cohabitation, which did not create the relation of husband and wife, and this view was adopted and made effective by the judgment below.

James Tobin, an Indian, testified that the deceased and the appellant came to him, and that the former requested him to inform one Kettle Labatum, an Indian chief, that he came there for the purpose of having him unite them in marriage; that he interpreted the request to the chief, who said that white men, after they live with Indian women for a time, "throw them out;" that he interpreted this to the deceased, who said that he would not do that; "that he would not throw out Sallie;" that Kettle then said that he would marry them if the deceased wanted her; that he interpreted this to the deceased who said that he did want her, and that he came there to see if he, Kettle, would marry them; that Kettle then called upon the deceased and the appellant to stand together, and asked the deceased if he would take the appellant as his wife; that he then asked the appellant if she would take the deceased as her husband; that she answered "Yes;" that he then caused them to shake hands and said, "You two are married and you must be man and wife;" that thereafter they lived together. He also said, in answer to the question whether the chief was a minister, "Why, he was a preacher; no getting around that." The wife of this witness testified, that she was the daughter of the chief; that the deceased "came to see her father and told her father that he wanted to marry Sallie. Her father asked Mr. Weatherall, 'Will you live with her until you die or until she dies?' and Mr. Weatherall says, 'Yes.' Then he married them right there, made them shake hands, and Mr. Weatherall swore he would live with her as long as both lived. . . He made them raise their hands and he said a prayer for them." Other evidence was admitted and stricken and offered and denied, tending to show declarations of the deceased that the marriage ceremony was performed by a minister and that the appellant was his wife; that they lived together as husband and wife until the husband's death, and that they were regarded as husband and wife by their friends and neighbors.

The respondents rely upon the following cases in support of the judgment: *In re McLaughlin's Estate*, 4 Wash. 570, 30 Pac. 651, 16 L. R. A. 699; *Kelley v. Kitsap County*, 5 Wash. 521, 32 Pac. 554; *In re Wilbur's Estate*, 14 Wash. 242, 44 Pac. 262. These cases, as we shall see, simply hold that a common law marriage and a marriage according to Indian custom are invalid in this state. In *In re McLaughlin's Estate*, at page 585, it is said:

"In all cases, whether common law marriages are recognized or not, evidence of cohabitation and repute is admissible, as tending to show a valid marriage; holding each other out as husband and wife to the public, and continued living together in that relationship has ordinarily, if not universally, been held sufficient proof, unless contradicted, to establish it even within those states where common law marriages are not recognized. This presumption could always be rebutted, however, by showing that the parties intended their connection to be illicit, and if it was so intended at its commencement it is presumed to continue, unless evidence is produced of a change of mind."

In the *Kelley* case, at page 524, it is said:

"The testimony in this instance shows that said Michael Kelley obtained this woman by paying two or three dollars in silver to her sisters; that they lived together a short time, and that she left him, she being at the time pregnant, and that the plaintiff was the issue."

And continuing it is said: "There is no claim that any marriage ceremony was ever performed for the parties." In *In re Wilbur's Estate*, it was held that a marriage between a white man and an Indian woman, according to Indian custom, was invalid. Later expressions from this court on the same subject are contained in the following cases: *Summerville v. Summerville*, 31 Wash. 411, 72 Pac. 84; *Shank v. Wilson*, 33 Wash. 612, 74 Pac. 812; *State v. Nelson*, 39 Wash. 221, 81 Pac. 721; *McDonald v. White*, 46 Wash. 334, 89 Pac. 891; *Nelson v. Carlson*, 48 Wash. 651, 94 Pac. 477; *In re Sloan's Estate*, 50 Wash. 86, 96 Pac. 684; *Thomas v. Thomas*, 53

Wash. 297, 101 Pac. 865. In the *Summerville* case, there
was no record evidence of a marriage. The wife testified,
that she saw neither a marriage license nor a marriage cer-
tificate; that her husband took her before a person whom she
believed to be a clergyman, and who performed a marriage
ceremony. In this case the court quoted approvingly from
Vol. 1 Bishop's Marriage & Divorce, § 959, as follows:

"If a ceremony of marriage appears in evidence, it is pre-
sumed to have been rightly performed, and to have been
preceded by all needful preliminaries."

Continuing:

"A valid marriage may be presumed to exist from general
reputation among the acquaintances of parties that such is
the fact, when that reputation is accompanied by their co-
habitation, and arises from their holding themselves out to
the world as occupying that relation to which the law refers
when marriage is mentioned."

The court then states that there is an exception to the rule
where a public offense is involved, and that in such case the
presumption of innocence overthrows the presumption of
marriage. In the *Shank* case, in speaking of the presump-
tion arising from cohabitation and reputation, it is said:

"It is well established law, not necessitating the citation
of authority, that the proof of continual cohabitation of a
man and woman, and of a continual assertion that the mar-
riage relation exists, and proof of such conduct as is con-
sistent with the marriage relation, raises the presumption,
in those states where the common law marriage itself is not
held to be a legal marriage, that the ceremonial or legal
marriage has preceded the acts mentioned."

It was further held in this case that record evidence of a
ceremonial marriage did not preclude evidence of prior co-
habitation and assertion of the marriage relation for the
purpose of raising a presumption of a preceding ceremonial
marriage. In the *McDonald* case, a marriage ceremony was
performed by an Indian minister, uniting in marriage a white
man and an Indian woman. There was no evidence that a

license had issued, nor that the minister was ordained. The court in this case said:

"It is evident that the parties to the marriage were endeavoring to comply with the law. . . They lived together many years after the ceremony, and held themselves out to the world, and were treated by the community, as being husband and wife. . . In view of all the surroundings, we do not think that the trial court erred in treating this as a valid marriage."

In the *Nelson* case, the rule announced in the *Summerville* and *Shank* cases is reaffirmed. To the same effect is *State v. Nelson*, 29 Wash. 221, 81 Pac. 721. In the later case, *In re Sloan's Estate*, in answer to the objection that there was no proof that a license was obtained or that the officiating officer was competent, it was said:

"The authority of the officer or clergyman performing the marriage ceremony, and all the prerequisites of a valid marriage will be presumed until the contrary is made to appear."

In the *Thomas* case, it was held that, for the purpose of sustaining a marriage and repelling the conclusion of an illicit relation, courts will seize all presumptions both of law and fact and press into service all things which can help in each particular case. The same view is announced in *Travers v. Reinhardt*, 205 U. S. 423.

We have reviewed the cases in this court for the purpose of showing that there is no real conflict between the earlier and later ones on this subject. We have seen that in the *McLaughlin* case it was stated by Judge Scott that, in the states where common law marriages are held invalid, a lawful ceremonial marriage may be presumed from cohabitation and reputation. The logic of that case has been liberally applied to the facts in the later cases to uphold the marriage relation, where the parties have lived together as husband and wife and held themselves out to the public as sustaining that relation. In such cases the law will, in favor of morality and decency, presume a legal marriage. This presumption

is, of course, always rebuttable. Whilst language may be found in some of the earlier cases which tends to support the judgment, the uniform and unbroken current of opinion in this court, as we read the cases, has been that, while a common law marriage is invalid in this state, evidence of cohabitation and reputation is admissible for the purpose of raising the legal presumption of a prior ceremonial marriage. The cogency of the presumption will, of course, depend upon the facts of each particular case. The evidence of cohabitation and reputation, the declaration of the husband that he was married to the appellant, the manner in which they lived together, and the opinion of their friends and neighbors as to how they regarded the relation between the parties, were admissible for the two-fold purpose, (1) to raise the presumption of a prior ceremonial marriage, and (2) to supplement the evidence of the ceremonial marriage. Their conduct towards each other is equivalent in law to a continuing declaration, by each, that they were occupying the relation of husband and wife.

Our code, Bal. Code, § 4470, provides:

"A marriage solemnized before any person professing to be a minister or a priest of any religious denomination in this state, or professing to be an authorized officer thereof, is not void, nor shall the validity thereof be in any way affected on account of any want of power or authority in such person, if such marriage be, consummated with a belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage. . . ."

Section 4471 provides:

"In the solemnization of marriage no particular form is required, except that the parties thereto shall assent or declare, in the presence of the minister, priest, or judicial officer solemnizing the same, and in the presence of at least two attending witnesses, that they take each other to be husband and wife."

The evidence brings the marriage ceremony within the terms of the statute. The chief who performed the cere-

mony was a Christian of the Presbyterian faith, and assumed to have authority to unite people in marriage. Moreover, it is evident that the marriage was performed with the belief on the part of both the contracting parties that he had authority to perform the marriage ceremony. They invoked his assistance for the sole purpose of being legally married. The respondents urge that there is no evidence that a license was procured, or that the chief had authority to perform the marriage ceremony. The authority of the officiating officer, together with all other prerequisites, will be presumed in the absence of countervailing evidence, where the marriage is consummated with a belief on the part of either or both the contracting parties that they have been lawfully joined in marriage.

The evidence shows that the appellant lived with one Hall for a period of four or five years preceding her marriage with the deceased. Mrs. Gibbs, a witness for the appellant, however, testified that she was not married to Hall, and there is no evidence to the contrary.

The court correctly ruled that the appellant was incompetent to testify as to the marriage, or to any other transaction with the deceased. Bal. Code, § 3991; *Spencer v. Terrel*, 17 Wash. 514, 50 Pac. 468; *O'Connor v. Slatter*, 46 Wash. 308, 89 Pac. 885; *Nelson v. Carlson, supra.*

We think the learned trial court erred in striking the evidence of the marriage ceremony, and in denying the evidence of declarations of the deceased as to his marriage with the appellant, and in refusing to permit the appellant to show facts as to the cohabitation of the parties and their reputation of being husband and wife.

The judgment will be reversed, and the case remanded with directions to proceed in conformity with this opinion, not foreclosing the respondents' right to meet the appellant's case.

RUDKIN, C. J., CHADWICK, FULLERTON, and MORRIS, JJ., concur.