HESTER A. WORTHINGTON, Appellee, v. ETHEL DIFFENBACH et al., Appellants.

WITNESSES: Competency—Transactions with Deceased—Proof of
1 Marriage. Plaintiff in an action against the heirs of an estate for the admeasurement of dower, is not a competent witness to testify that she married the deceased, was never divorced from him, and was his wife at the time of his death. (Sec. 4604, Code, 1897.)

TRIAL: Reception of Evidence—Premature Objections. An objec-
2 tion to a specified line of testimony, made prior to the introduction of any such testimony, is not *premature*, when, the objection being overruled, such testimony was immediately received.

Vol. 184 IA.—37

TRIAL:     Reception of Evidence—Non-Necessity to Repeat Objec-
3   tions.   A definite objection, once lodged against a specified line
    of testimony, need not and *ought not* to be repeated at every
    stage when such testimony is offered, unless the objector has
    so demeaned himself that the court may fairly assume that
    the objector has waived his former objection.

MARRIAGE:   Evidence—Sufficiency.  Testimony by one claiming
4   to have been the wife of a deceased that she married deceased,
    was never divorced from him, and was his wife at the time of
    his death, does not, *prima facie*, establish the fact of legal
    marriage, when the record reveals the further fact that claim-
    ant had had three prior matrimonial ventures, and offered sec-
    ondary and inconclusive evidence of the death or divorce of
    said three prior husbands.

*Appeal from Marion District Court.*—LORIN N. HAYS, Judge.

JULY 1, 1918.

REHEARING DENIED SEPTEMBER 30, 1918.

JAMES M. WORTHINGTON made deed to his son R. B.
Worthington, in which the grant to the son is "during his
natural lifetime, with remainder to the heirs of his body."
The covenants of warranty made by the grantor are made
with R. B. Worthington and "the heirs of his body."  The
trial court held that the appellee is the widow of R. B.
Worthington, and has dower right in the lands conveyed by
this deed, because of the Rule in Shelley's Case.  One Core
made deed to R. B. Worthington, conveying to him "during
his natural lifetime, with remainder to the heirs of his
body."  When this deed was made, the Rule in Shelley's
Case had been abrogated in this state by legislative enact-
ment.  But the trial court held that taking by R. B. Worth-
ington of a deed making conveyance to him during his nat-
ural lifetime, with remainder to the heirs of his body, was
an attempt to place the title in the heirs of R. B. Worthing-
ton, in fraud of the dower rights of his alleged widow.  The
defendants appeal.—*Reversed.*

*Crozier & Welch, Fred W. Lehmann, Jr.,* and *Brammer, Lehmann & Seevers,* for appellants.

*W. G. Vander Ploeg,* for appellee.

Salinger, J.—I.   It is immaterial whether the Rule in Shelley controls the one deed, and whether the second deed effects a fraud upon dower rights, unless there be competent and sufficient evidence that appellee is

1. Witnesses: competency: transactions with deceased: proof of marriage.

the widow of R. B. Worthington.   She has no interest in any land involved in the action, unless she be such widow.   Was the evidence of marriage incompetent?

So far as it is material here, Section 4604 of the Code provides that no party to an action may, in certain actions, be a witness "in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased."   She is a party to one of these actions.   See *Burton v. Baldwin,* 61 Iowa 283.   She was permitted to testify that she was married to R. B. Worthington, was not divorced from him, and remained his wife until he died.   It has been held that the statute prohibits proving an express agreement for compensation.   *Herring v. Herring,* 94 Iowa 56, at 59; *Cowan v. Musgrave,* 73 Iowa 384; *Sauer v. Nehls,* 121 Iowa 184, at 186. To the same effect is *Stevens v. Witter,* 88 Iowa 636; *Boeck v. Milke,* 141 Iowa 713; *Sheldon v. Thornburg,* 153 Iowa 622; *Ballinger v. Connable,* 100 Iowa 121, at 130.   Code Section 3139 provides that marriage is a civil contract.   *Gilman v. Sheets,* 78 Iowa 499, at 501, 502, intimates that some methods of proving marriage might be incompetent under the statute.   We think that, aside from this intimation in the *Sheets* case, the precise point has never been under consideration in this jurisdiction.   But it is well settled elsewhere. In *Hopkins v. Bowers,* 111 N. C. 175 (16 S. E. 1), the court said:

"If marriage is not a personal transaction between the contracting parties, what is it?"

In that case, under a statute in effect like our own, it is held the trial court properly ruled out evidence sought to be elicited of one Ann Boothe, to show marriage between her and Nash Boothe, and said:

"She was a party to the action and interested in the result, for both plaintiffs claim under Nash Boothe. * * * We are unable to accept the view of the defendant's counsel that it [marriage] is solely the act of the officiating minister or Justice of the Peace."

To the same effect is *Berger v. Kirby,* 105 Tex. 611 (153 S. W. 1130) ; *Bowman v. Little,* 101 Md. 273 (61 Atl. 223) ; *Crane v. Stafford,* 217 Ill. 21 (75 N. E. 424) ; and *Weatherall v. Weatherall,* 56 Wash. 344 (105 Pac. 822, 825). Under a statute provision that no person shall testify for himself concerning any transactions with a decedent in an action by a widow for the allotment of dower in her deceased husband's lands, she is incompetent to testify to the marriage. *Bartee v. Edmunds,* (Ky.) 96 S. W. 535. To the same effect are *Imboden v. St. Louis U. T. Co.,* 111 Mo. App. 220 (86 S. W. 263) ; *Matter of Brush,* 25 App. Div. 610 (49 N. Y. Supp. 803) ; *Shorten v. Judd,* 56 Kans. 43. One claiming a part of a decedent's estate, on the ground she was decedent's common-law wife, is incompetent to testify on that question. *Schwingle v. Keifer,* 105 Tex. 609 (153 S. W. 1132). In *Edelstein v. Brown,* 100 Tex. 403 (100 S. W. 129), in an action by the heirs of a woman against her reputed husband for their share of the community property, the court held that the alleged husband was incompetent to testify that he had never been married to decedent.

We hold this testimony was not permissible, under the statute.

II. But appellee urges that no proper objection was made, and appellant has so waived his right to complain.

So far as cases cited by appellee go, we shall see that they create a waiver because the objection was late. They are not applicable where, as here, the claim is that objection was made too soon.

The record discloses that the first statement by appellee as a witness is that her name is Hester A. Worthington, and that, immediately after this was said, defendant objected to the competency of the witness. It may be assumed the witness was not incompetent; and so assuming, it follows that, had the objection stopped at challenging her competency, it would not be a good objection. See *Campbell v. Collins*, 133 Iowa 152; *Watson v. Riskamire*, 45 Iowa 231. But the objection did not stop there. It continued with a statement that objected to any testimony from her "as to any personal transactions between her and James B. Worthington or R. B. Worthington, on the ground that she is a party to the action, which is against the heirs at law of R. B. Worthington, the witness being incompetent under the provisions of Section 4604 of the Code." Immediately after this objection was made, the appellee gave testimony in chief, which is before us in less than four lines of print; and it is that she was married to R. B. Worthington at Des Moines, Iowa, in October, 1899, that she was not divorced from him; that, from 1899 to the date of his death, she was his wife. The only other testimony is competent: to wit, that R. B. Worthington died about a year and a half ago. There are cases that might be strained into holding the objection was waived because it was not made before the witness was sworn. But these need no consideration, because it is the position of the appellee, not that this objection came too late, but that it came too soon, in that it was made before the witness gave any testimony now claimed to be objectionable, and was never again made dur-

2. TRIAL: reception of evidence: premature objections.

ing the taking of such testimony. We have held, time and
again, that, when it is once made clear
to the court that a certain line of testimony
is objected to,—that it is not to go into the
record with the consent of the objector,—it
is not only needless, but improper, to inject
into the record a repetition of these objections, every time
evidence of the same general character is later offered. The
waiver of objection by remaining silent is bottomed on rea-
soning that one may not complain of the reception of testi-
mony where his conduct may have induced the court to
believe that the reception was consented to. Now this ob-
jector told the court in advance that all testimony as to cer-
tain personal transactions was objected to. The testimony
now assailed followed immediately. It can hardly be as-
sumed that a failure to repeat the objection during the min-
ute or two required to put in this testimony justified the
court in believing that such testimony, if such personal
transaction as had been objected to, was being put in with
the consent of the appellant. It may be conceded that an ex-
amination following an advance objection might be so
lengthy and complicated as to require, in the interest of
justice, that such objection should be repeated. But that
concession, for the reasons stated, cannot rule this case.
If a statement that plaintiff was married to R. B. Worthing-
ton at Des Moines in October, 1899, was not divorced from
him, and that she was his wife from 1899 to the date of his
death, *is* a personal transaction, covered by the statute, it
would be great straining to say that the court believed it
should consider this testimony because it was not objected
to. The cases, including those upon which appellee relies,
support no such position. *Burton v. Baldwin* holds no more
than that objection to a deposition, on the ground that the
*witness* is incompetent, must be urged when he is sworn;
but objections to his *testimony* may be urged on the trial.

3. **TRIAL**: recep-
tion of **evi-
dence**: non-
necessity to
repeat ob-
jections.

Other cases rule that, where the witness is incompetent,—say, because wife or husband,—objection must be made before the witness is sworn. Manifestly, these do not condemn an objection for being made *too early*. The essence of *Slattery v. Slattery*, 120 Iowa 717, at 723, is found in the statement:

"A general objection to the competency of a witness (the reference being, in fact, to his testimony) made at the close of his evidence, comes too late."

*Davis v. Hall*, 128 Iowa 647, 648, relied on by appellee, is against, rather than for, appellee. In it is said:

"The objection to the competency of J. J. Hall to testify to the transaction with his wife was not raised when he was sworn, or when he was asked to relate the facts and circumstances as to the making of the deed to his wife, but was put forward for the first time after the witness had testified to his version of the transaction. This, we think, was too late, and the court was justified in treating the objection as waived."

That the appellant, in cross-examining, repeatedly brought out statements that the parties were married, is no answer. If it was error to receive the testimony of marriage, in chief, this error was not waived because, in an attempt to shake this testimony, the witness repeated the objectionable statement made in the examination in chief, over apt objection.

We are firmly persuaded that, if this testimony was objectionable because of the provisions of Section 4604 of the Code, that objection to it was made, and was not waived.

III.   The case is here for review *de novo*. If the objection to the competency of it be waived, we are inclined to think that it does not establish appellee was the lawful wife of the decedent. Assume her testimony that she married him and remained his wife until he died is competent, and that, ordinarily, it would, in the absence of dispute, be con-

4. MARRIAGE:
   evidence:
   sufficiency.

clusive. But is that so where her testimony that she was and remained married discloses reasons for doubting the conclusion, or for doubting the legality of the marriage? If that be so, why should not the rule apply that failure to produce the best evidence reasonably obtainable, and substituting therefor that which is inconclusive and doubtful, operates against the weight of the testimony given. And is not this such a case? "There are several ways in which marriage may be proved." *Bartee v. Edmunds,* (Ky.) 96 S. W. 535. How was it done here? What else does the record disclose than the statement of the plaintiff that she was married to the decedent? It begins with a confession that she began by having illicit relations, by which a child was born to her. She says her first marriage was to one Montgomery. She does not know just what year this was in,— in fact, does not know when it was nor how long it was before what she says is her second marriage; she "expects" Montgomery and she lived together seven or eight years. It was in Crawfordsville, Indiana. She says she obtained a divorce from him at that place. No record of it was produced. She testifies he is dead; also that her authority for saying so is a statement made to her by Montgomery's mother, who is now dead. Certainly, better proof of the death was, in reason, obtainable. Next, she married Rainager. She says she can't tell when she married him, or how many years it was before she married decedent. She claims the marriage ceremony was performed in Des Moines, by a preacher there whom she does not know. She says she obtained a default divorce from Rainager in Des Moines, and, in effect, that she does not know whether he was within the jurisdiction of the court. No record of this divorce is produced. She does not know when Rainager died, but she says she knows he is dead, because she was told he was, "after we quit." More remarkable still is her testimony on the alleged third marriage. As to this, she says:

"I have been married to another man besides Rainager and Montgomery,—a gentleman over in Indianola. I have forgotten his name, and can't tell you his name. Married him after my marriage to Rainager and after my marriage to Montgomery, and he [the gentleman from Indianola] was the last man I married before marrying Worthington." She adds she does not remember where she married this man; but in another place, does remember that it was "in a squire's office in Des Moines." She does not know how long she lived with this man, and her clearest recollection is that he was old, and gave her $400 in money. She says a divorce was procured in Indianola. That is the county seat in a county adjoining the one where this trial was had, and the record of divorce is not produced. She says she thinks this man is dead, but she does not know where he died, and "never bothered any more about it." When she met Worthington, she told him she was a widow; and she had a divorce case pending against Worthington when he died. No useful purpose will be served by further comment. We are of opinion there was such a failure to produce clear and competent testimony on the vital point of appellee's marriage to Worthington—testimony readily obtainable—so that, under well-settled rules, a most serious doubt is left on whether the naked statement of the plaintiff that she was married to Worthington proves a legal marriage. In our opinion, the decree of the district court must be, and therefore it is,— *Reversed.*

PRESTON, C. J., LADD, EVANS, and GAYNOR, JJ., concur.