T.C. Summary Opinion 2001-97


UNITED STATES TAX COURT


ENG GUEK KANG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

KOK H. NGO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10272-99S, 10902-99S.      Filed June 26, 2001.


Eng Guek Kang and Kok H. Ngo, pro sese.

<u>Julie L. Payne</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time each petition was filed.  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure.

In separate notices of deficiency, respondent determined that petitioners are liable for the following deficiencies in Federal income taxes:

Docket No. 10272-99S       <u>Eng Guek Kang</u>

| <u>Taxable Year</u> | <u>Deficiency</u> |
|---|---|
| 1995 | $3,148 |
| 1996 | 2,443 |
| 1997 | 1,709 |

Docket No. 10902-99S       <u>Kok H. Ngo</u>

| <u>Taxable Year</u> | <u>Deficiency</u> |
|---|---|
| 1995 | $10,084 |
| 1996 | 19,597 |
| 1997 | 13,911 |

After concessions by the parties,[1] the issues for decision

---

[1] The items and amounts listed below represent cost of goods sold and deductions disallowed by respondent that were not addressed by Mr. Ngo at trial. As a result, Mr. Ngo is deemed to have conceded these items. See Rules 142(a), 149; <u>Pearson v. Commissioner</u>, T.C. Memo. 2000-160.

| | Amount | | |
|---|---|---|---|
| | <u>1995</u> | <u>1996</u> | <u>1997</u> |
| Cost of Goods Sold | $1,652 | $253 | $9,566 |

| <u>Claimed Deduction</u> | Amount | | |
|---|---|---|---|
| | <u>1995</u> | <u>1996</u> | <u>1997</u> |
| Car and truck | $3,120 | --- | $1,893 |
| Advertising | 108 | --- | 160 |
| Commission | --- | $30 | --- |
| Office expenses | 43 | --- | --- |
| Travel/meals/entertainment | 10 | --- | --- |
| Other expenses | 1,664 | --- | 270 |

are: (1) Whether petitioners are entitled to head of household filing status on their respective individual Federal income tax returns during the years at issue; (2) whether petitioner Eng Geuk Kang (Ms. Kang) is entitled to earned income credits during the years at issue; (3) whether petitioner Kok H. Ngo[2] (Mr. Ngo) is entitled to earned income credits during the years at issue; (4) whether Mr. Ngo failed to report gross receipts of $7,275, $21,421, and $5,409, respectively, during the years at issue, on Schedules C, Profit or Loss From Business; and (5) whether Mr. Ngo is entitled to deduct certain Schedule C expenses in excess of amounts allowed by respondent for the years at issue.[3] The resolution of the first three issues turns on whether petitioners were considered married pursuant to the provisions of section 7703(b).

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the respective petitions were filed, petitioners resided in Auburn, Washington.

---

[2] Mr. Ngo is also known as Guo Xing Woo; however, for the purpose of this opinion, we shall refer to him as Mr. Ngo.

[3] Our resolution of the issues in this case at docket No. 10902-99S will also resolve respondent's adjustment to the amount of self-employment income tax for each year and the deduction therefor.

Background

Petitioners were born in Cambodia but speak a dialect of Chinese spoken in the Chaozhou region of South China, the source of their shared ethnic roots. Petitioners met at a refugee camp in Vietnam where Ms. Kang was alone because her entire family had been killed during Pol Pot's reign in Cambodia. Ms. Kang lived with Mr. Ngo and his family in the refugee camp. In 1989, under the sponsorship of Mr. Ngo's brother, petitioners immigrated directly from the refugee camp to Seattle, Washington. Petitioners spoke no English when they first arrived in the United States in 1989 and currently speak only limited English. It is unclear from the record whether petitioners made representations on the immigration documents that they were husband and wife. Petitioners are now naturalized citizens of the United States.

In 1989, some time after their arrival in the United States, Ms. Kang gave birth to their child, Winson You Ngo (Winson). Ms. Kang has a child, Fong Siu Ngo[4] (Fong), who was born in 1984 in Vietnam, from a prior relationship. Mr. Ngo also has a child, Long You Ngo (Long), who was born in 1979 in Vietnam from a prior relationship. Fong and Long immigrated with petitioners to the United States in 1989.

---

[4] Although Fong carries Mr. Ngo's surname, the record shows that at all times relevant, Ms. Kang always used her surname "Kang" and never used or was known as "Ngo".

Petitioners and their children reside in a 2-story home located at 2602 17th Street, S.E., Auburn, Washington (Auburn residence). However, petitioners claim that they live separately with Mr. Ngo and Long residing on the first floor and Ms. Kang, Winson, and Fong residing on the second floor. The only kitchen in the residence is located on the second floor. The Auburn residence was purchased by petitioners on October 24, 1994, by statutory warranty deed as "KOK H. NGO AND ENG G. KANG, HUSBAND AND WIFE". Petitioners refinanced the Auburn residence on November 8, 1998, via a deed of trust stating "GUO XING WOO* AND ENG G. KANG, HUSBAND AND WIFE" "*WHO ACQUIRED TITLE AS KOK H. NGO".

In 1992, Mr. Ngo purchased a preexisting donut business known as Donut Star. Ms. Kang was the only employee of Donut Star. Mr. Ngo prepared a variety of donuts at 4 a.m., and Ms. Kang sold the donuts during the day to customers. Coffee, milk, and other beverages were also sold at Donut Star. Mr. Ngo used an Ekonimik Financial Record Summary ledger (business ledger) to maintain Donut Star's daily books and records. Mr. Ngo testified that at the end of each month he recorded the total cash register receipts as income and also recorded various expenditures made during the month. However, for some months Mr. Ngo recorded no income. The expenses were itemized into the following categories: Food, supplies, repair and maintenance, tax and

license, sales tax, utilities, rent, advertising and insurance, professional services, linens and laundry, dues, wages, bank, auto, phone bill, loan, membership card fee, and miscellaneous. At the end of the year, Mr. Ngo turned over the business ledger to his accountant, K.B. Accounting (K.B.), for the preparation of his income tax return.

Petitioners filed joint Federal income tax returns from 1990 through 1993.

In the notice of deficiency issued to Mr. Ngo, respondent made the following adjustments to Schedule C deductions by Mr. Ngo:

| | 1995 | | | 1996 | | | 1997 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claimed | Allowed | Dis-allowed | Claimed | Allowed | Dis-allowed | Claimed | Allowed | Dis-allowed |
| Advert. | $108 | $0 | $108 | -- | -- | -- | $160 | $0 | $160 |
| Car and truck | 3,462 | 342 | 3,120 | 0 | 422 | (422) | 2,032 | 139 | 1,893 |
| Deprec. | 12,245 | 0 | 12,245 | 8,746 | 0 | 8,746 | 3,124 | 0 | 3,124 |
| Commis. | -- | -- | -- | 30 | 0 | 30 | -- | -- | -- |
| Insur. | -- | -- | -- | 1,738 | 2,036 | (298) | 1,535 | 0 | 1,535 |
| Legal and prof. services | 600 | 300 | 300 | -- | -- | -- | 4,861 | 0 | 4,861 |
| Office expense | 43 | 0 | 43 | 0 | 13 | (13) | 0 | 150 | (150) |
| Rent or Lease | 15,531 | 15,581 | (50) | 16,972 | 15,520 | 1,452 | 16,945 | 11,067 | 5,878 |
| Taxes | 1,412 | 3,522 | (2,110) | 2,085 | 2,238 | (153) | 0 | 3,097 | (3,097) |
| Travel/ Meals/ Entert. | 10 | 0 | 10 | -- | -- | -- | -- | -- | -- |
| Supplies | 2,451 | 5,407 | (2,956) | -- | -- | -- | -- | -- | -- |
| Util. | 8,180 | 5,929 | 2,251 | 5,241 | 5,455 | (214) | 7,922 | 2,033 | 5,889 |
| Salaries/ Wages | 12,000 | 10,329 | 1,671 | 12,000 | 8,465 | 3,535 | 12,618 | 4,618 | 8,000 |
| Other Expenses | 3,548 | 1,884 | 1,664 | -- | -- | -- | 270 | 0 | 270 |
| Dues | 0 | 143 | (143) | 0 | 147 | (147) | 0 | 900 | (900) |
| Service | -- | -- | -- | 0 | 40 | (40) | -- | -- | -- |
| Phone | -- | -- | -- | -- | -- | -- | 0 | 362 | (362) |
| Freight | -- | -- | -- | -- | -- | -- | 0 | 972 | (972) |
| Sign | -- | -- | -- | -- | -- | -- | 0 | 1,719 | (1,719) |
| Repairs/ Maint. | 315 | 0 | 315 | 15,860 | 0 | 15,860 | -- | -- | -- |
| Total | 59,905 | 43,437 | 16,468 | 62,672 | 34,336 | 28,336 | 49,467 | 25,057 | 24,410 |

Cost of Goods Sold

| Claimed | Allowed | Dis- allowed | Claimed | Allowed | Dis- allowed | Claimed | Allowed | Dis- allowed |
|---|---|---|---|---|---|---|---|---|
| 36,092 | 34,440 | 1,652 | 35,000 | 34,747 | 253 | 19,298 | 9,732 | 9,566 |

Respondent disallowed deductions in the amounts shown above because Mr. Ngo failed to maintain adequate records to substantiate the claimed deductions. However, respondent allowed Mr. Ngo adjusted deductions for 1995, 1996, and 1997, of $1,794, $3,533, and $2,782, respectively, for one-half of the self-employment tax due.

Respondent further determined that Mr. Ngo had unreported gross income for the years in issue. Because the business ledger reflected no recorded income for some months, respondent calculated that the omitted income was at least equal to the expenses for those months. Using the bank deposits method, respondent determined that Mr. Ngo failed to report gross income of $7,275, $21,421, and $5,409, for 1995, 1996, and 1997, respectively. Finally, respondent determined that Mr. Ngo was not entitled to earned income credits during the years at issue, and his filing status was married filing separate, not head of household.

In the notice of deficiency issued to Ms. Kang, respondent determined that she was not entitled to earned income credits during the years at issue, and her filing status was married filing separate, not head of household.

Filing Status

Petitioners contend that they were never married and therefore are entitled to file their respective individual Federal income tax returns as head of household.

Generally, an individual's marital status for determining his filing status under section 1 is made on the last day of such individual's tax year. See sec. 7703(a)(1). An individual will not be considered married if he is legally separated from his spouse under a decree of divorce or of separate maintenance. See sec. 7703(a)(2).

For Federal tax purposes, determination of marital status is made in accordance with the law of the State of the marital domicile. See Eccles v. Commissioner, 19 T.C. 1049, 1051 (1953), affd. per curiam 208 F.2d 796 (4th Cir. 1953); Calhoun v. Commissioner, T.C. Memo. 1992-246, affd. without published opinion 993 F.2d 1533 (2d Cir. 1993). The existence or dissolution of a marriage has typically been within the province of the States. See Sosna v. Iowa, 419 U.S. 393, 404 (1975); Eccles v. Commissioner, supra at 1051. This Court looks to the law of the State of petitioners' residence, Washington in this instance, to determine whether petitioners were married on the last day of 1995, 1996, or 1997. See Lee v. Commissioner, 64 T.C. 552, 556-559 (1975), affd. 550 F.2d 1201 (9th Cir. 1977).

Under Washington law, the burden of proof is upon the party

alleging the existence of a marriage.  In this case, the burden falls on respondent.  On the other hand, there is such a strong public policy in favor of marriage that the law seizes upon all presumptions in order to repel the conclusion of unmarried cohabitation.  See Thomas v. Thomas, 53 Wash. 297, 101 P. 865 (1909); Goldwater v. Burnside, 22 Wash. 215, 219, 60 P. 490 (1900).  Such presumptions of marriage may be overcome only by the weight of clear, cogent, and convincing evidence.[5]  See In re Sloan's Estate, 50 Wash. 86, 88-89, 96 P. 684 (1908).

A presumption of marriage exists upon proof of continual cohabitation and reputation of marriage in the community due to the parties' holding themselves out to be married.  See Weatherall v. Weatherall, 56 Wash. 344, 349-351, 105 P. 822 (1911).

Section 5.44.140 of the Washington Code states as follows:

> In any proceeding regarding the determination of a family relationship, including but not limited to the parent and child relationship and the marriage relationship, a determination of family relationships regarding any person or persons who immigrated to the United States from a foreign country which was made or accepted by the United States immigration and naturalization service at the time of that person or persons' entry into the United States creates a rebuttable presumption that

---

[5]  The clear, cogent, and convincing evidence is a higher standard of evidence than a mere preponderance of evidence due to the strong public policy in support of marriage.  See In re Sloan's Estate, 50 Wash. 86, 88-89, 96 P. 684 (1908).

> the determination is valid and that the
> family relationship under foreign law is as
> made or accepted at the time of entry. * * *

This presumption may be overcome by a preponderance of evidence showing that a living person other than the person named by the U. S. Immigration and Naturalization Service is in the relationship in question. Wash. Rev. Code sec. 5.44.140 (1995).

Respondent argues that the following evidence supports the presumption of the validity of petitioners' marital status: (1) Petitioners filed joint income tax returns for the years 1990 through 1993; (2) public records filed with the King County Recorder's Office in 1994 and 1998 show that petitioners held themselves out to the public as husband and wife; (3) Ms. Kang was sponsored by Mr. Ngo's brother, who is not her blood relative, thus alleging that the Immigration and Nnaturalization Service believed petitioners were married upon immigrating to the United States; and (4) Fong's surname is that of Mr. Ngo even though Mr. Ngo is not Fong's biological father, thus evidencing petitioners' intent to hold themselves out to the public as a family. We find respondent's arguments persuasive.

Petitioners' naked assertions that they were never married are insufficient to overcome the presumption of the validity of marriage. Petitioners testified that due to their very poor knowledge of English upon their arrival in 1989, they relied on persons assisting them during the immigration process and the

- 11 -

purchase of their home to accurately prepare the documents.
Although we are not unsympathetic to the language barriers new
immigrants face upon their arrival into the United States, we
note that petitioners made no effort to correct the warranty deed
and deed of trust documents upon the refinancing of their home 9
years after their arrival in the United States, if, in fact they
were never married.  Furthermore, we find it persuasive that Mr.
Ngo aptly conveyed the change of his name to Guo Xing Woo to the
finance company, and, yet, failed to convey the information that
he and Ms. Kang were not husband and wife (as was reflected on
their original property documents and refinance documents).

On the basis of the record, we find that for Federal income
tax purposes petitioners were married on the last day of the tax
years 1995, 1996, and 1997.  Therefore, we hold that petitioners
are not entitled to head of household filing status.

Earned Income Credit

Section 32 provides for an earned income credit.  However,
if a taxpayer is married, the earned income credit is available
only if a joint return is filed for the taxable year under
section 6013.  See sec. 32(d).

Because we found above that petitioners are considered
married under section 7703(a), and because petitioners filed
their returns separately and not jointly, an earned income credit
is not allowable as a matter of law.  See Presley v.

<u>Commissioner</u>, T.C. Memo. 1996-553; <u>Becker v. Commissioner</u>, T.C. Memo. 1995-177.

Respondent is sustained on this issue.

<u>Schedule C--Gross Receipts</u>

Mr. Ngo reported gross receipts for 1995, 1996, and 1997, of $106,989, $106,755, and $73,928, respectively. Respondent used the bank deposits method to determine that the correct amounts of gross receipts are $114,264, $128,176, and $79,337, respectively.

Gross income includes all income from whatever source derived. See sec. 61(a). Section 61(a)(2) specifically includes income derived from business. It is required under Federal law that taxpayers maintain adequate and accurate tax records. See sec. 6001; see also <u>Jones v. Commissioner</u>, 903 F.2d 1301, 1303 (10th Cir. 1990), affg. in part and revg. in part and remanding T.C. Memo. 1988-373. It is well settled that the Commissioner is entitled to use any reasonable methods of determining a taxpayer's income where the taxpayer either has inadequate records or does not make his books and records available for audit. See <u>Holland v. United States</u>, 348 U.S. 121, 130-132 (1954); <u>Gordon v. Commissioner</u>, 63 T.C. 51, 78 (1974), supplemented by 63 T.C. 501 (1975), affd. in part and revd. in part 572 F.2d 193 (9th Cir. 1977); <u>Giddio v. Commissioner</u>, 54 T.C. 1530, 1533 (1970).

The use of the bank deposits method for computing income has

long been sanctioned by this Court.  See <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977).  The bank deposit method assumes all money deposited into a taxpayer's bank account during a given period is income.  See <u>DiLeo v. Commissioner</u>, <u>supra</u> at 868.  Bank deposits are prima facie evidence of income.  See <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986); <u>Estate of Mason v. Commissioner</u>, <u>supra</u> at 656.  In analyzing a bank deposits case, deposits are considered income when there is no evidence that they represent anything other than income.  See <u>Price v. United States</u>, 335 F.2d 671, 677 (5th Cir. 1964); <u>United States v. Doyle</u>, 234 F.2d 788, 793 (7th Cir. 1956).

The record consists of the business ledger and a few random Donut Star checks payable to Seafirst Bank and the Internal Revenue Service.  Mr. Ngo has not provided bank statements, cash register receipts, or any testimony to support his position that the original claimed gross receipts are correct.

After review of the record, we find that Mr. Ngo failed to prove the gross receipts of Donut Star, and, therefore, respondent's determination is sustained for all years at issue.

<u>Schedule C Expense Deductions</u>

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving the entitlement to any deduction

claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions.  See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Section 162(a) allows a taxpayer to deduct all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business.  Welch v. Helvering, 290 U.S. 111, 113 (1933).  To be "ordinary" the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved.  Deputy v. Du Pont, 308 U.S. 488, 495 (1940).  No deduction is allowed for personal, living, or family expenses. See sec. 262(a).

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it, the Court is permitted to make as close an approximation as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The estimate must have a reasonable evidentiary basis. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

1.  Rent or Lease

Mr. Ngo claimed a deduction for rent or lease payments of

$16,972 and $16,945, in 1996 and 1997, respectively.  Respondent allowed $15,520 and $11,067, respectively.

At trial, Mr. Ngo provided rent statements for 1996 and 1997 from PHI Excess Properties showing the amounts paid by Mr. Ngo on behalf of Donut Star.  We find that Mr. Ngo has satisfied his burden to substantiate the rent or lease payments made on behalf of Donut Star during 1996 and 1997.  Mr. Ngo's claimed deduction is sustained.

### 2.  Utilities

Mr. Ngo claimed utility expense deductions of $8,180 and $7,922 in 1995 and 1997, respectively.  Respondent allowed $5,929 and $2,033, respectively.

After reviewing the record, we find that Mr. Ngo's business ledger sufficiently supports, and thus substantiates, the utility expenses of Donut Star in the following amounts.  For 1995, Mr. Ngo is entitled to a total deduction of $7,897.54.  For 1997, Mr. Ngo is entitled to a total deduction of $4,355.82.

### 3.  Legal and Professional Fees

Mr. Ngo claimed a deduction for legal and professional fees of $600 and $4,861 in 1995 and 1997, respectively.  Respondent disallowed $300 in 1995 and the entire amount in 1997.

Generally, legal fees may be deductible under section 162(a) only if they are connected to a taxpayer's trade or business.  See Guill v. Commissioner, 112 T.C. 325, 328-329 (1999); Davis v.

Commissioner, T.C. Memo. 1999-250. Mr. Ngo has not introduced evidence supporting a deduction in excess of that determined by respondent for 1995. Accordingly, respondent is sustained on this issue for 1995.

In regards to 1997, Mr. Ngo's business ledger reflects $11,448.63 in legal and professional fees incurred during 1997. After review of the business ledger, we find that $6,269.43 was not legal in nature, but instead pertained to various professional fees including window service and electrician fees. Accordingly, these amounts are not allowed as legal and professional fees.[6] Additionally, of the $5,179.20 balance, $300 was paid to K.B. for accounting fees and $4,879.20 was paid to Clement Law Center. Mr. Ngo did not testify as to the purpose of services rendered by Clement Law Center. We also find that Mr. Ngo has failed to show that the claimed legal expenses of $4,879.20 were incurred in carrying on his or Donut Star's trade or business. Accordingly, Mr. Ngo is entitled to $300 in legal and professional fees for 1997.

4. Repair/Maintenance

Mr. Ngo claimed repair/maintenance deductions of $315 and $15,860 for 1995 and 1996, respectively. Respondent disallowed these claimed deductions.

Mr. Ngo's business ledger shows a total of $6,684.36 for

_____

[6]    See infra Repairs and Maintenance.

1995.  Of this amount, we find that $5,657.62 was substantiated from the description of the expense in the business ledger. Although Mr. Ngo only claimed a repair/maintenance expense of $315, we find that he is entitled to a deduction of $5,657.62.

Likewise, Mr. Ngo's business ledger shows a total of $16,347.87 in repair/maintenance expenses.  After review of the business ledger and notations contained therein, we find that Mr. Ngo is entitled to a deduction of $14,730.55 for repair/ maintenance expenses in 1996.

In 1997, Mr. Ngo did not claim a repair/maintenance expense deduction.  However, in our review of his legal and professional fees above, we found that many of the entries were erroneously categorized as legal and professional fees.  Of the misplaced entries, we find that $3,552.83 was properly recharacterized as repair/maintenance expenses.  Furthermore, after reviewing Mr. Ngo's entire business ledger for 1997, we find that he is also entitled to a deduction for repair/maintenance expenses of $3,910.67.  Accordingly, for 1997 Mr. Ngo is entitled to a total deduction of $7,473.50 in repair/ maintenance expenses for 1997.

### 5.  Salary/Wages

Mr. Ngo claimed salary/wages deductions of $12,000, $12,000, and $12,618, respectively, for the years at issue.  Respondent allowed $10,329, $8,465, and $4,618, respectively.

Reasonable compensation for services actually rendered is

deductible under section 162 as an ordinary and necessary business expense.  See sec. 162(a)(1).

Ms. Kang was the only employee of Donut Star.  She received Forms W-2, Wage and Tax Statement, during the years in issue reporting $12,000, $12,000, and $5,000, respectively, for 1995, 1996, and 1997.  From the record, we note that during 1995 Mr. Ngo paid Ms. Kang a monthly salary or wage of $923.50, totaling $11,082; however, the claimed deduction is for a gross amount of $12,000.  Due to lack of substantiation, Mr. Ngo is entitled to a deduction of $11,082.  Furthermore, Mr. Ngo's records do not substantiate salary/wages expenses of $12,000 during 1996.  In examining Mr. Ngo's business ledger for 1996, we find that Ms. Kang was paid only $8,464.50, corresponding to the amount allowed by respondent.  Therefore, respondent's determination is sustained as to 1996.

For 1997, we find that Ms. Kang actually received $12,617.50 for her services rendered to Donut Star, despite the inconsistent Form W-2 issued to her.  Therefore, Mr. Ngo is entitled to a deduction of $12,617.50, less employment credits.

6.  Insurance

Mr. Ngo claimed insurance expense deductions of $1,535 in 1997.  Respondent disallowed the entire amount.  After reviewing the record, we find that Mr. Ngo's business ledger sufficiently supports, and thus substantiates, the insurance expense of

$1,535. Accordingly, we hold for Mr. Ngo as to this issue.

### 7. Depreciation

Section 167(a) permits a depreciation deduction for the exhaustion and wear and tear of property used in a trade or business. Mr. Ngo claimed depreciation deductions of $12,245, $8,746, and $3,124, respectively, during the years at issue. Respondent disallowed all claimed depreciation expenses.

At trial, Mr. Ngo provided asset entry worksheets for the years 1996 and 1997. Mr. Ngo has satisfied his burden, and his claimed deductions are sustained for these years. However, Mr. Ngo failed to provide any records for the basis of his claimed depreciation expense deduction for 1995, and, therefore, respondent's determination is sustained for 1995.

Reviewed and adopted as the report of the Small Tax Case Division.

Decisions will be entered
under Rule 155.